**In re Anthony LEE and Mary Jo Lee, Debtors.**

**Bankruptcy No. BK–93–13922–LN.**

United States Bankruptcy Court, W.D. Oklahoma.

Nov. 30, 1993.

Kenneth Mayfield, Oklahoma City, OK, for debtors.

David O. Beal, Oklahoma City, OK, for Associates Financial Services Co.

Robert H. Jaques, Oklahoma City, OK, for Beneficial of Oklahoma, Inc.

Letha Sweeney, Oklahoma City, OK, for Chapter 13 Trustee.

Ann Spears, Oklahoma City, OK, Chapter 13 Trustee.

### ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

PAUL B. LINDSEY, Bankruptcy Judge.

On July 7, 1993, debtors filed their joint voluntary petition herein under Chapter 13 of the Bankruptcy Code.[1] In their Chapter

---

1. References herein to statutory provisions by section number only will be to provisions of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., unless the context requires otherwise.

13 plan, as amended on October 28, 1993, debtors propose to treat the claim of Associates Financial Services Co., ("Associates"), the holder of a first mortgage on debtors' principal residence, as fully secured, and to continue regular monthly mortgage payments while curing pre-petition arrearages, in accordance with § 1322(b)(5).[2] Debtors propose to treat the claim of Beneficial of Oklahoma, Inc. ("Beneficial"), the holder of a second mortgage on debtors' principal residence, as totally unsecured.[3]

In a hearing held November 10, 1993 before this court, counsel for debtors and Beneficial submitted to the court, on written briefs, the issue of the applicability of *Nobelman v. American Savings Bank*, 508 U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), to a wholly unsecured second or subsequent homestead mortgage. In *Nobelman*, the court held that, under § 1322(b)(2),[4] a Chapter 13 plan could not modify the rights of the holder of an undersecured home mortgage by reducing the claim of that mortgage, under § 506(a),[5] to the fair market value of the residence.

In the case before this court, the parties apparently agree that the amount owed by debtors on the Associates first mortgage is greater than the fair market value of the residence. Beneficial's second mortgage, therefore, is wholly unsecured. Debtors rely on the August 18, 1993 decision in *In re Plouffe*, 157 B.R. 198 (Bankr.D.Conn.1993). In that case, the court begins its discussion with a recitation of the *Nobelman* holding, that "§ 1322(b)(2) prohibits a Chapter 13

debtor from relying on § 506(a) to reduce an undersecured homestead mortgage to the fair market value of the mortgaged residence." *Nobelman*, 508 U.S. at ——, 113 S.Ct. at 2108, 124 L.Ed.2d at 233. The *Plouffe* court then states that the question presented to it "is whether § 1322(b)(2) also prohibits the debtor from relying on § 506(a) to reduce a wholly unsecured second mortgage on such premises to a value of zero as a secured claim and thereafter to treat the entire debt in the plan as an unsecured claim." *Plouffe*, 157 B.R. at 198.

In *Plouffe*, the creditor, supported by the Chapter 13 trustee, contended that since it held a mortgage on the homestead, the protection of its rights by § 1322(b)(2) did not depend on whether there was any equity in the homestead available to it, and that its state law rights, including the right to retain its lien until payment of the debt in full, remained enforceable.

Debtors in *Plouffe* pointed out that the *Nobelman* court recognized that Chapter 13 debtors may properly look to § 506(a) for a judicial valuation of the collateral to determine the status of a creditor's secured claim and that it is permissible for debtors to seek a valuation in proposing their Chapter 13 plan. Debtors draw from these recognitions the conclusion that *Nobelman* requires that the mortgage holder have some equity in the homestead to be entitled to the status of a holder of a secured claim, the rights of which may not be modified. In *Plouffe*, the court had judicially determined that the value of the creditor's "interest in the estate's interest in such property" was zero. Thus, debt-

---

2. Section 1322(b)(5) is as follows:
    (b) Subject to subsections (a) and (c) of this section, the plan may—
    * * *
    (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

3. The plan proposes to pay a dividend of approximately 30 percent on unsecured claims.

4. Section 1322(b)(2) is as follows:
    (b) Subject to subsections (a) and (c) of this section, the plan may—

* * *
    (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

5. Section 506(a), in material part, is as follows:
    (a) an allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

ors contended that the creditor held only an unsecured claim and that § 1322(b)(2) authorizes a plan to "modify the rights ... of holders of unsecured claims."

The court in *Plouffe* concludes that debtors' position as to the teachings of *Nobelman* is the more persuasive; that it is evident from *Nobelman* that for a mortgagee to claim protection against modification under § 1322(b)(2), it must qualify as the holder of a secured claim to some extent; and that "[t]here is neither a logical nor rational basis for a creditor holding a completely unsecured claim to be protected from claim modification in a bankruptcy case simply because the creditor had obtained a lien on the homestead prepetition." *Plouffe*, 157 B.R. at 200. The court quotes the following from *In re Bellamy*, 962 F.2d 176, 179 (2d Cir.1992): "[T]reatment under the Code turns on whether a *claim* is secured or unsecured, not whether a *creditor* is secured or unsecured."

In *Plouffe*, the creditor's objection to confirmation of the Chapter 13 plan, which treated the creditor's claim as wholly unsecured and modified the creditor's rights, was overruled.

Neither the parties nor this court have found any post-*Nobelman* published decision on this issue other than *Plouffe*. The court notes, however, that the Bankruptcy Court for the Eastern District of North Carolina has followed *Plouffe* on two occasions in very recent unpublished opinions.[6] As in *Plouffe*, the North Carolina court notes that § 1322(b)(2) only limits modification with respect to the rights of a holder of a claim secured by the debtor's principal residence. Since the second mortgage holder in each of those cases was not the holder of a secured claim under § 506(a) but of a wholly unsecured claim, it was held that the prohibition against modification did not prevent the avoidance of the lien under § 506(d).

This court is of the opinion that the courts in *Plouffe, Brown,* and *Kidd,* have made the correct analysis of *Nobelman* and of the

modification prohibition contained in § 1322(b)(2). Since it is conceded in this case that the value of the residence is less than the amount due under the first mortgage, Beneficial's second mortgage is wholly unsecured, and Beneficial is therefore the holder of only an unsecured claim. Thus, under *Plouffe, Brown,* and *Kidd,* debtors are not prohibited by § 1322(b)(2) from modifying the rights of *Beneficial* in their Amended Chapter 13 plan.

This court is aware that the application of this holding may bear results that appear somewhat incongruous in some cases. Under this reading of *Nobelman*, the rights of a mortgagee which is the holder of a secured claim *in any amount*, however slight, may not be modified in any way if that claim is secured only by a security interest in real property that is the debtor's principal residence.[7]

It is easy to envision a scenario involving a creditor holding a claim which arose from a transaction wholly unrelated to the financing of debtors' residence, but in connection with which it demanded and received a second or subsequent lien on debtors' residence. In such a case, if the amount of the creditor's secured claim, as determined under § 506(a), was as little as one dollar, this reading of *Nobelman* would prohibit the modification of the creditor's rights in any particular. In many cases, the presence of such an undersecured claim, and debtors' inability to modify the creditor's rights, would deal a fatal blow to debtors' ability to propose a confirmable Chapter 13 plan, or to save their home.

In *Nobelman*, Justice Stevens, in a concurring opinion, wrote that the Court's reading of the statute was "faithful to the intent of Congress," which was the "favorable treatment of residential mortgagees ... to encourage the flow of capital into the home lending market." *Nobelman*, 508 U.S. at ——, 113 S.Ct. at 2112, 124 L.Ed.2d at 237. The court in *Plouffe*, referring to those statements, noted that "[t]here are not such con-

**6.** *In re Brown*, 1993 WL 544385, No. 93–00702–5–ATS (Bankr.E.D.N.C. October 26, 1993); *In re Kidd*, 161 B.R. 769 (Bankr.E.D.N.C.1993).

**7.** This court is not asked to, and does not, decide the related issue raised in debtors' brief: Whether credit life and disability insurance held by Beneficial constitute other security for its debt, and therefore vitiate the modification prohibition.

cerns when dealing with the second mortgage market." *Plouffe,* 157 B.R. at 200. In *Plouffe,* and in this case, the modification prohibition of § 1322(b)(2) is held to be inapplicable only when the second of subsequent mortgage is wholly unsecured. The holding of *Nobelman* continues to apply to all undersecured, as opposed to wholly unsecured, second or subsequent mortgages, irrespective of the degree to which they are undersecured or of the nature of the transaction in which the lien was obtained. Thus, the statements of Justice Stevens would seem to be applicable only when dealing with first mortgages, as was the case in *Nobelman.* The statements of the *Plouffe* court would seem to have applicability to only those second or subsequent mortgages which are found to be wholly unsecured.

The apparent incongruity described above, however, is not present in the case before this court, and the resolution of it is not for the courts in any event. The Congress, should it desire to limit the protections of § 1322(b)(2), to first mortgage liens or otherwise, certainly knows how to do so.

Based upon the foregoing, this court holds that Beneficial possesses no secured claim by reason of its second mortgage on debtors' principal residence. Debtors therefore are not prohibited, by § 1322(b)(2) or otherwise, from modifying the rights of Beneficial in their Amended Chapter 13 plan. The objection of Beneficial to confirmation of debtors' amended Chapter 13 plan will therefore be overruled.

IT IS SO ORDERED.