**In re Ella MITCHELL, Debtor.**

**Bankruptcy No. 93–46139–399.**

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Aug. 3, 1994.

Wendell J. Sherk, St. Louis, MO, for debtor.

John V. LaBarge, Jr., Chapter 13 Trustee, St. Louis, MO.

Joseph S. Buehler, Chesterfield, MO, for creditor.

*MEMORANDUM OPINION AND ORDER*

BARRY S. SCHERMER, Chief Judge.

### INTRODUCTION

The issue in this case is whether the Debtor can modify the rights of a junior mortgage holder pursuant to § 1322(b)(2), when the junior mortgagee's claim is totally unsecured.

### JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 28 U.S.C. § 157(b)(2)(B).

### STATEMENT OF FACTS

Green Tree Financial Corporation, ("Creditor") hold a junior mortgage in Ella Mitchell's ("Debtor") principal residence. There are three other liens which supersede Creditor's mortgage: a first mortgage; a lien for taxes; and a lien for district sewer services. Altogether, these three senior liens total $11,643.03. Debtor's principal residence has a fair market value of no more than $9,000.00.

Creditor filed a Proof of Claim listing its debt as fully secured. Debtor filed an Objection to Creditor's claim, alleging that Creditor's claim should be treated as unsecured under the Chapter 13 plan.

At the July 14, 1994, Hearing on the Debtor's Objection to Claim, Creditor urged this Court to apply the United States Supreme Court's decision in *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), to this present scenario. This Court took the issue under submission and today renders this decision.

### DISCUSSION

*I. Section 1322(b)(2) and Nobelman.*

The Bankruptcy Code sets out a lists of provisions which a Chapter 13 plan may contain. One of these provisions is § 1322(b)(2) which sets out the types of claims which a debtor may modify through a Chapter 13 plan. This section provides:

(b) Subject to subsection (a) and (c) of this section, the plan may—

(2) **modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence,** or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

§ 1322(b)(2) (emphasis added).

In the *Nobelman* case, the Supreme Court interpreted the above-emphasized language of § 1322(b)(2). The Court held that a Chapter 13 plan may not modify the rights of the holder of an undersecured home mortgage by reducing the claim of the mortgage, under § 506(a), to the fair market value of the residence. *Sette v. Bello (In re Sette),* 164 B.R. 453, 454 (Bankr.E.D.N.Y.1994). Under 1322(b)(2), the phrase "claim secured only by" language refers "to the lienholder's entire claim, including both the secured and unsecured components of the claim." *Nobelman,* —— U.S. at ——, 113 S.Ct. at 2111.

*Nobelman* essentially prohibited the bifurcation of a claim under § 506(a), because it would be tantamount to an impermissible modification under § 1322(b)(2). Creditor urges this Court to extend *Nobelman*'s application from claim bifurcation (*i.e.* splitting a claim between secured and unsecured portions) to this present scenario in which the Creditor's claim is rendered totally unsecured due to the superseding liens on the Debtor principal residence. Such an extension would be inconsistent with *Nobelman* and the plain language of § 1322(b)(2), and would contradict the plethora of post-*Nobelman* bankruptcy court decisions which have held that *Nobelman* cannot be applied to the present situation.

*A. Nobelman, § 506(a), and § 1322(b)(2)*

*Nobelman* instructs the Court that it should look at § 506(a) to determine the status of a claim. *Id.* at ——, 113 S.Ct. at 2110 ("Petitioners were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim"). Under § 506(a) a claim is

secured where the value of the collateral equals or is greater than the amount of the claim. However, if the amount of the creditor's claim exceeds the value of the collateral, the portion that exceeds the value is unsecured.

In this case, it is undisputed that under § 506(a), Creditor holds a totally unsecured claim. Because the claim is fully unsecured, it does not fall within that provision of § 1322(b)(2) to which *Nobelman* applied. *Nobelman* interpreted the following language in § 1322(b)(2): "the plan may modify the rights of *holders of secured claims, other than ...*" The reasoning in *Nobelman* cannot be applied to this present situation because Creditor is not the "holder of [a] secured claim," but the holder of a fully unsecured claim.

In *Nobelman*, the mortgagee was an undersecured creditor, it held both a secured claim and an unsecured claim. 113 S.Ct. at 2108–2109. That situation is much different from the facts sub justice because here the Creditor has no secured claim in the Debtor's principal residence. In order to be protected from modification under § 1322(b)(2), "the second mortgagee must have at least some interest in the property securing its claim after satisfaction of the senior mortgage." *Sette*, 164 B.R. at 455. Here, the Creditor does not enjoy any interest in the Debtor's property.

The plain language of § 1322(b)(2) addresses the Debtor's power to modify the rights of holders of unsecured claims. Unlike the exception made for holders of secured claims, "there is no exception to the unsecured claims clause, the rights of a holder of only an unsecured claim ... are not protected from modification." *In re Hornes*, 160 B.R. 709, 711 (Bankr.D.Conn.1993). Thus, Debtor's attempt to modify the rights of the Creditor in this case is not prohibited by *Nobelman* and is instead consistent with the plain language of § 1322(b)(2).

### B. Post–Nobelman Bankruptcy Court Decisions

This Court is aware of a plethora of post-*Nobelman* bankruptcy court decisions which address the same issue presented in this case and which reach the same result. Without describing in detail the facts and analysis of each decision, this Court points to these cases as support for the reasoning adopted herein. *Sette v. Bello (In re Sette)*, 164 B.R. 453, 456 (Bankr.E.D.N.Y.1994) ("since there is no equity or value in the collateral to which the ... second mortgage may attach, the ... claim may be treated as a general unsecured claim"); *In re Lee*, 161 B.R. 271, 274 (Bankr. W.D.Okla.1993) (*Nobelman* applies to all undersecured, as opposed to wholly unsecured mortgages); *In re Williams*, 161 B.R. 27, 30 (Bankr.E.D.Ky.1993) (some portion of mortgagee's claim must be secured under § 506(a) before the mortgagee is entitled to retain its rights under state law); *In re Hornes*, 160 B.R. 709, 716 (Bankr.D.Conn. 1993) (for mortgagee's rights to be protected under § 1322(b)(2), it must first qualify as the holder of a secured claim under § 506(a)); *In re Plouffe*, 157 B.R. 198, 199 (Bankr.D.Conn.1993) ("*Nobelman* requires that the mortgage holder have some equity in the homestead to be entitled to the status of a secured claim holder, with nonmodifiable rights").

### CONCLUSION

For the foregoing reasons it is

ORDERED that the Debtor's Objection to the Claim of Green Tree Financial Corporation is SUSTAINED.