**In the Matter of Michael SANDERS, Jamesetta Barnes, Debtor.**

**Bankruptcy No. BK96–80228.**

United States Bankruptcy Court, D. Nebraska.

Nov. 15, 1996.

David Hicks, Omaha, NE, for the Debtor.

Steffi Swanson, Bellevue, NE, for Green Tree Financial Servicing Corp.

## MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

Hearing was held on September 30, 1996, on the Chapter 13 Plan filed by the debtors. Debtors have filed an objection to the claim of Green Tree Financial Servicing Corp. which has been resisted. The issue presented is the same in the plan confirmation process and the objection to claims. This memorandum contains findings of fact and conclusions of law required by Fed.Bankr.R. 7052 and Fed.R.Civ.P. 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(B), (K), (L).

### Background

Green Tree Financial Servicing Corp. (Green Tree) filed an objection to the Chapter 13 plan proposed by the debtors. Green Tree objects to the plan on the basis that the plan treats its claim as a general unsecured claim. Green Tree maintains that such treatment of its claim contravenes 11 U.S.C. § 1322(b)(2).

Debtors have objected to the claim of Green Tree and seek a determination of the extent of Green Tree's lien in their principal residence.

On November 19, 1994, the debtors executed a note secured by a deed of trust in the amount of $15,012.30. The deed of trust covers real property which is the debtor's

principle residence, and Green Tree is the holder of both the note and the deed of trust that secures it.

At the time of the filing of the petition, the residential real estate was valued at $30,000, and is subject to two additional mortgages that are senior to Green Tree's. The first mortgage is in the approximate amount of $28,000, and the second is in the approximate amount of $8,000. Thus, there is no equity that secures Green Tree's security interest.

The issue presented in this matter is whether Green Tree's rights as the holder of a lien in the debtors' principal residence may be modified by the debtors' plan pursuant to 11 U.S.C. § 1322(b)(2) [1] as interpreted by the United States Supreme Court in *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

### Decision

Green Tree does not hold a secured claim or a secured claim component under a § 506(a) analysis and therefore Green Tree's rights pursuant to its claim may be modified by the debtors' Chapter 13 plan pursuant to § 1322(b)(2).

### Discussion

Green Tree contends that the plan's treatment of its claim impermissibly modifies its rights as a holder of a claim secured by a security interest in debtors' personal residence. The Code at § 1322(b)(a) provides:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of *secured claims, other than* a *claim* secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]

11 U.S.C. § 1322(b)(2) (emphasis supplied).

Green Tree relies on *Nobelman* for the proposition that its lien cannot be

1. All subsequent statutory references are to sections of Chapter 11, United States Code, some- times referred to as the Bankruptcy Code, or Code.

stripped off[2] by the debtor. In *Nobelman,* the United States Supreme Court held that under § 1322(b)(2), a debtor could not strip off the lien of a partially secured creditor that held a lien on the debtor's principal residence. More specifically, the Court held that the term "claim" in the "other than . . ." clause of Section 1322(b)(2) did not refer back to the term "secured claims" in the preceding clause, but rather stood on its own and its definition encompassed both the secured and unsecured components of a partially secured creditor's claim.[3] *Id.* at 330–31, 113 S.Ct. at 2111.

The Court did not specifically address the issue of a creditor in Green Tree's position, i.e. a creditor that is totally unsecured but holds a lien in the debtor's principal residence. The vast majority of reported cases decided after *Nobelman* that have specifically addressed the issue have held that a creditor in Green Tree's position is not protected by § 1322(b)(2)'s anti-modification provision, and that its rights may be modified by a Chapter 13 plan. See, *Wright v. Commercial Credit Corp.,* 178 B.R. 703 (E.D.Va. 1995); *Norwest Fin. Georgia, Inc. v. Thomas (In re Thomas ),* 177 B.R. 750 (Bankr.S.D.Ga. 1995); *In re Lee,* 177 B.R. 715 (Bankr. N.D.Ala.1995); *Castellanos v. PNC Bank (In re Castellanos ),* 178 B.R. 393 (Bankr. M.D.Pa.1994); *In re Woodhouse,* 172 B.R. 1 (Bankr.D.R.I.1994); *In re Mitchell,* 177 B.R. 900 (Bankr.E.D.Mo.1994); *In re Sette,* 164 B.R. 453 (Bankr.E.D.N.Y.1994); *In re Lee,* 161 B.R. 271 (Bankr.W.D.Okla.1993); *In re Hornes,* 160 B.R. 709 (Bankr.D.Conn.1993); *In re Williams,* 161 B.R. 27 (Bankr.E.D.Ky. 1993); *In re Kidd,* 161 B.R. 769 (Bankr. E.D.N.C.1993); *In re Plouffe,* 157 B.R. 198 (Bankr.D.Conn.1993); *In re Moncrief,* 163

B.R. 492 (Bankr.E.D.Ky.1993). See, also 5 Lawrence P. King, et al., Collier on Bankruptcy ¶ 1322.06, at 1322–18 (15th ed. 1996) ("The *Nobelman* opinion strongly suggests, however, that if a lien is completely undersecured, there would be a different result."). But see, *In re Neverla,* 194 B.R. 547 (Bankr. W.D.N.Y.1996) (The right of a creditor holding a lien on the debtor's principal residence cannot be modified in a Chapter 13 plan, even if wholly unsecured). In addition, in a case prior to *Nobelman,* Judge John Minahan, a bankruptcy judge in this district, held that while a partially secured creditor secured only by a lien in the debtor's principal residence would be protected by the anti-modification provision of § 1322(b)(2), a totally unsecured creditor like Green Tree could have its rights modified by a plan. *In re Kaczmarczyk,* 107 B.R. 200, 204 (Bankr. D.Neb.1989). The first aspect of Judge Minahan's opinion is consistent with *Nobelman;* the second aspect was not overruled by *Nobelman.*

Perhaps the best analysis of this issue in a post-*Nobelman* case was provided by *In re Hornes,* 160 B.R. at 709. In that case, the court found that the term "secured claim" can be construed in two ways. First, it may be interpreted in the literal sense, that is, a claim that is secured by a lien on collateral. Second, it may be interpreted in the "code" sense, that is, a claim is secured to the extent that there exists some equity in the collateral that secures the claim. *Id.* at 711–12. The court went on to find that the "other than . . ." clause of § 1322(b)(2), as held by *Nobelman,* refers to a secured claim in the literal sense, but that the term "secured claim" in the preceding clause refers to a secured claim in the "code" sense, and that a creditor

---

**2.** The term "stripped off" refers to lien avoidance pursuant to § 506(d) in a Chapter 13 context (§ 1322 of the Bankruptcy Code). "[I]n recent litigation, the term 'strip off' is applied where a junior mortgagee is totally unsecured as to the debtor's principal residence, while the term 'strip down' is still used where a mortgage is partially secured, and partially unsecured." *In re Woodhouse,* 172 B.R. 1, 1 n. 1 (Bankr.D.R.I.1994).

**3.** The term "claim" is defined in § 101(5) of the Bankruptcy Code as follows:

"claim" means—
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment . . .

must hold a secured claim in both the literal and code senses in order to come within the anti-modification provision of § 1322(b)(2). *Id.* at 712.

Although the Court in *Nobelman* held that the term "claim" in the "other than ..." clause does not refer back to the term "secured claim" in the preceding clause,

> *Nobelman* did not hold that the other than clause applies to the rights of holders other than those holders described in the secured claims clause that precedes it, that is holders of secured claims in the code sense; indeed that issue was not before the court. The Court simply held that the word "claim" in the other than clause stands by itself, and is not implicitly modified by the word "secured" appearing in the secured claims clause. It is therefore consistent with *Nobelman* ... to hold that even though [the creditor's] claim is literally within the language of the other than clause, since it holds only a totally unsecured claim in the code sense, § 1322(b)(2) does not protect its rights.

*Hornes,* 160 B.R. at 714.

The *Hornes* court supported this proposition in three different ways. First, it noted that the *Nobelman* Court's discussion of the rule of the last antecedent[4] supported the proposition that the term "secured claims" was used in the code sense in § 1322(b)(2), because

> [i]f "secured claims" meant, as in § 506(d), only whether there existed a security

agreement purporting to create a lien on the residence, the rule of the last antecedent argument would have been irrelevant, because in that event, the term "claim" in the other than clause could have referred to its last antecedent, i.e. "secured claims" in the literal sense, without creating any problem of interpretation for the court.

*Id.* at 714.

Second, the Court in *Nobelman* found that the debtors could not modify the terms of the unsecured component of the creditor's claim without also modifying the terms of the secured component. 508 U.S. at 331, 113 S.Ct. at 2111. According to the court in *Hornes,* this problem referred to in *Nobelman* was not with the bifurcation of the creditor's claim into secured and unsecured components, but rather the problem was with the treatment of the secured component of the claim that was secured by a home mortgage lien. 160 B.R. at 715. However, that "problem is not applicable to the holder of a claim that is completely unsecured following a § 506(a) analysis, because there is no inconsistency of treatment involved." *Id.*

Third, the court in *Hornes* found that the last clause of § 1322(b)(2) supported the argument that the terms "secured claims" and "unsecured claims" are used in their code sense in § 1322(b)(2). *Id.* at 715. That clause states that the plan "may leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2). "The Code does not generally classify creditors based on the existence of a piece of paper purporting

---

4. The Court in *Nobelman* stated as follows with regard to the rule of the last antecedent:

Petitioners urge us to apply the so-called "rule of the last antecedent," which has been relied upon by some Courts of Appeals to interpret § 1322(b)(2) the way petitioners favor. According to this argument, the operative clause "other than a claim secured by a security interest in ... the debtor's principal residence" must be read to refer to and modify its immediate antecedent, "secured claims." Thus, § 1322(b)(2)'s protection would then apply only to that subset of allowed "secured claims," determined by application of § 506(a), that are secured by a lien on the debtor's home—including, with respect to the

mortgage involved here, the bank's secured claim for $23,500. We acknowledge that this reading of the clause is quite sensible as a matter of grammar. But it is not compelled. Congress chose to use the phrase "claimed secured ... by" in § 1322(b)(2)'s exception rather than repeating the term of art "secured claim." The unqualified word "claim" is broadly defined under the Code ... It is also plausible, therefore, to read "a claim secured only by a [homestead lien]" as referring to the lienholder's entire claim, including both the secured and the unsecured components of the claim.

*Id.* at 330, 113 S.Ct. at 2111.

to give a creditor rights in specified collateral, but rather on whether a creditor actually holds a claim supported by valuable estate property." *Id.* See, *In re Plouffe,* 157 B.R. at 200 ("There is neither a logical nor rational basis for a creditor holding a completely unsecured claim to be protected from claim modification in a bankruptcy case simply because the creditor had obtained a lien on the homestead prepetition. 'Treatment under the Code turns on whether a claim is secured or unsecured, not whether a creditor is secured or unsecured.' ")

While all three methods of analysis described above support the proposition that the term "secured claims" is used in the code sense in § 1322(b)(2), and thus a creditor must have secured claim in both the literal sense and the code sense in order to have its rights protected by the anti-modification clause, the most compelling support for the proposition comes from the *Nobelman* Court's discussion of § 506(a).

With regard to a § 506(a) analysis, the Court stated:

By virtue of its mortgage contract with [the debtors], the bank is indisputably the holder of a claim secured by a lien on [the debtors'] home. Petitioners were correct in looking to § 506(a) for judicial valuation of the collateral to determine the status of the bank's secured claim ... But even if we accept [the debtors'] valuation, the bank is still the "holder" of a "secured claim," because [the debtors'] home retains $23,500 of value as collateral. That portion of the bank's claim that exceeds $23,500 is an "unsecured claim componen[t]" under 506(a); however, that determination does not necessarily mean that the "rights" the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim.

*Nobelman,* 508 U.S. at 328–29, 113 S.Ct. at 2110 (citations omitted). Thus, the Court approved of a § 506(a) analysis to value the creditor's claim in a Section 1322 context. However, the § 506(a) analysis approved of by the court would be superfluous if any

claim secured by a lien on the debtor's principal residence were protected by the anti-modification provision. In other words, there would be no need for a § 506(a) analysis if fully secured, partially secured, and totally unsecured home mortgage lienholders all received the protection of the anti-modification provision, because in that instance any value assigned to the lienholder's claim components would be irrelevant in the treatment of the claim under § 1322(b)(2). See, *In re Williams,* 161 B.R. at 29–30 ("This Court ... is persuaded by the language used in *Nobelman* that the '... Petitioners were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim ...' (at page 2110) is meaningless unless some portion of the claim must be secured under § 506(a) analysis before the creditor is entitled to retain the rights it has under state law.")

Green Tree does not hold a secured claim in the code sense. Therefore, its claim is unsecured in the code sense, and may be modified by a Chapter 13 plan according to a plain reading of § 1322(b)(2). *In re Lee,* 177 B.R. at 716 ("... [M]ortgages ... [that] are not secured in any way by the debtor's residence because the value is less than the balance owed on the first and second mortgages ... are unsecured by definition, and § 1322(b)(2) does not preclude modification of the 'rights' of holders of unsecured claims."); *In re Sette,* 164 B.R. at 456 ("[S]ince there is no equity or value in the collateral to which the Defendants' second mortgage may attach, the Defendants' claim, may be treated as a general unsecured claim ..."); *In re Lee,* 161 B.R. at 273 ("Since it is conceded in this case that the value of the residence is less than the amount due under the first mortgage, [the creditor's] second mortgage is wholly unsecured, and [the creditor] is therefore the holder of only an unsecured claim. Thus ... debtors are not prohibited by § 1322(b)(2) from modifying the rights of [the creditor] in their Amended Chapter 13 plan.")

### Lien Avoidance

■ The issue of the right of the debtors to modify the claim of Green Tree arises in

the context of the plan confirmation process. To determine if the plan is confirmable as written it is necessary to determine the extent and validity of the lien asserted in Green Tree's proof of claim. Fed.Bankr.R.Proc. 7001(2) provides that such a determination shall be made in an adversary proceeding and the rule does not appear to contemplate such a determination being made in the confirmation process as a contested matter. However, Fed.Bankr.R.Proc. 3007 provides that if an objection to claim is filed and is joined with a request for relief of the kind specified in Rule 7001, such contested matter "becomes an adversary proceeding." Debtors have filed an objection to Green Tree's claim and requested that the extent of the lien be determined. Therefore, by virtue of Rule 3007, the objection becomes an adversary proceeding and the court has the right to make factual and legal findings valuing and avoiding the lien pursuant to 11 U.S.C. § 506(a) and (d). The resolution of the conflict between the parties over the extent of the lien and its avoidance under Section 506(a) and Section 506(b) shall, pursuant to Rule 3007, be considered as having been litigated in an adversary proceeding.

### Conclusion

A creditor that holds a security interest in the debtor's principal residence is not protected by the anti-modification provision of § 1322(b)(2) if the creditor does not hold a "secured claim" or a secured claim component pursuant to § 506(a). Green Tree does not hold a "secured claim" or a secured claim component pursuant to § 506(a). Its lien is avoided under Section 506(d) and its rights may be modified by the debtors' plan. Accordingly, Green Tree's objection to the debtors' plan is overruled.

Separate journal entry shall be filed.