In re David **BARNES** and Cynthia Barnes, Debtors.

David **BARNES** and Cynthia Barnes, Plaintiffs,

v.

**AMERICAN GENERAL FINANCE,** Defendant.

Bankruptcy No. 95 B 23462.
Adv. No. 96 A 013032.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

March 5, 1997.

John C. Renzi, Joliet IL, for Plaintiffs.

Clay Mossberg, Chicago IL, for Defendant.

Craig Phelps, Chicago, IL, Chapter 13 Trustee.

## MEMORANDUM OPINION

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary proceeding relates to bankruptcy proceedings filed by David and Cynthia Barnes ("Debtors") under Chapter 13 of the Bankruptcy Code (the "Code"), 11 U.S.C. § 101 *et seq.* Debtors seek an order under 11 U.S.C. § 506(a) and (d) entirely avoiding and stripping away the lien of American General Finance ("AGF" or "Creditor"), granting Debtors' objection to the secured status of Creditor's claim, and awarding attorney's fees and costs. AGF has moved for dismissal of the Complaint and Adversary proceeding. Each party filed briefs supporting their positions.

After considering the pleadings and the briefs filed, and by separate final order, Creditor's motion to dismiss the Complaint and Adversary proceeding is granted.

## BACKGROUND AND FACTS PLEADED

The following facts are pleaded and are taken as true for purposes of Defendant's Motion to Dismiss:

On April 25, 1990, Creditor lent money to Debtors in return for a promissory note. As part of the transaction, Debtors voluntarily granted Creditor a second mortgage on their principal residence located at 113 Cedarbend Drive, Romeoville, Illinois. Plaintiff alleges that Defendant is secured only by the value of that property, and therefore no other collateral secured the loan.

On November 1, 1995, Debtors filed their Chapter 13 petition. The accompanying schedules listed Debtors' principal residence as subject to both a senior and a junior mortgage. The senior mortgage creditor filed a claim for $85,925.61 and AGF, the junior mortgage creditor, filed a claim for $6,721.12. Debtors' Plan called for 100% payment of all secured claims and 10% payment of all unsecured claims. That Plan was confirmed.

On September 19, 1996, six months after the confirmation order was issued, Debtors filed this Adversary complaint, objecting to the Creditor's secured status. Debtors allege that the value of their principal residence, as measured by a post-confirmation appraisal performed on July 23, 1996, is only $85,000.00. Since the appraised value is less than the first mortgage on the Debtors' principal residence, Debtors claim that AGF's junior mortgage, which lacks any underlying equity, may be stripped pursuant to 11 U.S.C. § 506(a) and avoided under § 506(d).

## DISCUSSION

### Jurisdiction

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the Court pursuant to 28 U.S.C. § 157 and Local

General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. Venue lies properly under 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(B) (allowance and disallowance of claims) and § 157(b)(2)(K) (determination of the validity, extent, or priority of liens).

### Standards for a Motion to Dismiss

In order for any defendant to prevail on a motion to dismiss, it must appear from the pleadings that the plaintiff can prove no set of facts in support of its claims which would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Gorski v. Troy,* 929 F.2d 1183, 1186 (7th Cir.1991). The issue is not whether the plaintiff will ultimately prevail, but whether it has pleaded a cause of action sufficient to entitle it to offer evidence in support of its claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Both pleaded facts and reasonable inferences drawn from pleaded facts must be considered in a light most favorable to the plaintiff when reviewing a motion to dismiss. *Gorski v. Troy,* 929 F.2d at 1186; *Corcoran v. Chicago Park District,* 875 F.2d 609, 611 (7th Cir.1989); *Ross v. Creighton University,* 740 F.Supp. 1319, 1326 (N.D.Ill.1990). However, such consideration cannot save this case.

### Defining Stripdowns and Stripoffs Under § 506(a)

Bankruptcy Code § 506(a) allows for a secured claim to undergo a valuation analysis to determine how the claim relates to the underlying collateral. Section 506(a) provides:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest

... is less than the amount of such allowed claim.

11 U.S.C. § 506(a).

Section 506(d) further provides:

To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) Such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) Such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d).

Section 506(a) can lead to three possible valuation alternatives. If the secured claim is less than the value of the underlying collateral, the claim is fully secured. If the secured claim partially exceeds the value of the underlying collateral, the claim is bifurcated into secured and unsecured components, a process sometimes referred to as a "stripdown" of the creditor's claim. *See Dewsnup v. Timm,* 502 U.S. 410, 412, 112 S.Ct. 773, 775, 116 L.Ed.2d 903 (1992). Finally, if the secured claim completely exceeds the value of the underlying collateral, the claim is asserted to entirely "strip off," leaving the creditor wholly unsecured.

Section § 1322(b)(2) of the Code may sometimes accomplish the same results in Chapter 13, but it is subject to one exception not applicable to § 506(a):

Subject to subsections (a) and (c) of this section, the plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence....

11 U.S.C. § 1322(b)(2). Thus, secured rights in real estate may be modified in Chapter 13, but not if they apply to a debtor's principal residence. The modification of creditor rights permitted by § 506(a), in contrast, may be applied to property including the debtor's principal residence. Since Debtor's residence is the only collateral involved here, § 1322(b) does not allow modification of this creditor's rights.[1] The issue presented is

---

1. Since § 1322(b)(2) applies when the secured claim is secured "only" by the security interest in

a debtor's residence, the addition of other collateral will make that provision inapplicable. *See*

whether in Chapter 13 the provisions of § 1322(b)(2) prevent a debtor from using § 506(a) to strip off the lien of a junior mortgagee that is wholly unsecured by value of the property.

### The Effect of Nobleman

The Supreme Court in *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), recognized that § 1322(b)(2) has a limiting effect on § 506(a). The unanimous *Nobelman* decision held under § 1322(b)(2) that a debtor in Chapter 13 could not modify rights of a secured creditor holding a security interest only in the debtor's principal residence by stripping down the mortgage into secured and unsecured components. 508 U.S. at 332, 113 S.Ct. at 2111. In *Nobelman*, the Chapter 13 debtors argued that the creditor's claim should be stripped down because the underlying value of their principal residence was less than their mortgage. 508 U.S. at 326, 113 S.Ct. at 2108–09. However, the opinion reasoned that such a stripdown would "modify" the creditor's rights because the creditor would lose its payment and interest on the unsecured component, resulting in modification in the total package of rights the creditor held. 508 U.S. at 331, 113 S.Ct. at 2111.

*Nobelman* focused on the language of § 1322(b)(2) and denied the debtor's attempt to strip down the mortgage. 508 U.S. at 332, 113 S.Ct. at 2111. Section 1322(b)(2) allows a debtor's plan to "modify the *rights* of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence* ...." 11 U.S.C. § 1322(b)(2) (emphasis added). Since the term "rights" is *not* defined in the Code, the Supreme Court reasoned that Congress intended for all courts to look to state law and the underlying mortgage contract for a definition of creditor rights. 508 U.S. at 329, 113 S.Ct. at 2110. The Court looked to Texas law, which included the creditor's right to repayment over the term of the loan, to retain the lien until full payment is made, to accelerate and foreclose on the residence if the debtor defaulted on its payments, and to recover any deficiency after foreclosure. *Id.*

*Nobelman* rejected the debtors' interpretation of § 1322(b)(2) as allowing modification of the creditor's claim based on the claim's valuation. 508 U.S. at 328–29, 113 S.Ct. at 2109–10. The opinion did not agree that the "rights" the mortgagee enjoyed, which were protected by § 1322(b)(2), were limited by the valuation of its secured claim. 508 U.S. at 328, 329, 113 S.Ct. at 2110. The Court explained that allowing section "506(a)'s valuation and bifurcation of secured claims ... in the manner [the debtors] propose would require a modification of the rights of the holder of a security interest. Section 1322(b)(2) prohibits such a modification where ... the lender's claim is secured only by a lien on the debtor's principal residence." 508 U.S. at 332, 113 S.Ct. at 2111.

Debtors here attempt to distinguish *Nobelman* because the mortgage held by the creditor there was partly secured by the fair-market-value equity in the Debtors' principal residence and was only partly unsecured for the portion exceeding the fair market value. In contrast, it is alleged here that the residence has a fair market value less than the senior mortgage. Thus, AGF is said to be completely unsecured and with rights only as an unsecured creditor. This rests on an argument that the "strip down" forbidden by *Nobelman* is not the same under § 1322(b)(2) as the "strip off" proposed here.

Debtors cite a number of cases that distinguished *Nobelman* on the basis of it being a "stripdown" rather than a "stripoff" case. Those opinions held that a complete stripoff of the mortgage is permissible under § 506(a) and despite § 1322(b)(2) when the creditor's security interest in the debtor's principal residence was wholly unsecured. *See Associates Fin. Servs. Corp. v. Purdue (In re Purdue)*, 187 B.R. 188 ( S.D.Ohio 1995) (allowing a stripoff of non-purchase-money mortgage debt secured by a security interest in the debtor's principal residence); *Wright v. Commercial Credit Corp.*, 178 B.R. 703 (E.D.Va.1995) (holding that *Nobelman*

*e.g., In re Libby*, 200 B.R. 562, 568 (Bankr.D.N.J. 1996). As stated, Plaintiffs do not assert any other collateral applicable here.

does not apply when a creditor's security interest in the debtor's principal residence is wholly unsecured); *see also In re Libby*, 200 B.R. 562 (Bankr.D.N.J.1996); *In re Lee*, 177 B.R. 715 (Bankr.N.D.Ala.1995); *Norwest Fin. Georgia, Inc. v. Thomas (In re Thomas)*, 177 B.R. 750 (Bankr.S.D.Ga.1995); *Castellanos v. PNC Bank (In re Castellanos)*, 178 B.R. 393 (Bankr.M.D.Pa.1994); *In re Mitchell*, 177 B.R. 900 (Bankr.E.D.Mo.1994); *Sette v. Bello (In re Sette)*, 164 B.R. 453 (Bankr.E.D.N.Y.1994); *In re Woodhouse*, 172 B.R. 1 (Bankr.D.R.I.1994); *In re Brown*, 1993 WL 544385 (Bankr.E.D.N.C.1993); *In re Hornes*, 160 B.R. 709 (Bankr.D.Conn. 1993); *In re Kidd*, 161 B.R. 769 (Bankr. E.D.N.C.1993); *In re Lee*, 161 B.R. 271 (Bankr.W.D.Okla.1993); *In re Moncrief*, 163 B.R. 492 (Bankr.E.D.Ky.1993); *In re Plouffe*, 157 B.R. 198 (Bankr.D.Conn.1993); *In re Williams*, 161 B.R. 27 (Bankr.E.D.Ky.1993).

Instead of looking to rights granted by § 1322(b)(2), the opinions in these cases looked first to § 506(a) for valuation of the creditor's claim. As a result, the creditors' secured rights were eliminated because, in each case, a senior mortgage exceeded the fair market value of the principal residences. Because all of those creditors held junior mortgages lacking any equity, the opinions sanctioned stripoffs of the junior mortgages by pointing to dicta in *Nobelman* that stated "even if we accept petitioners' valuation, the bank is still the 'holder' of a 'secured claim,' because petitioners' home retains $23,500 of value as collateral." *Nobelman*, 508 U.S. at 329, 113 S.Ct. at 2110.

In a typical case among those opinions, the district judge in *In re Purdue* affirmed the bankruptcy court's decision to allow the debtor there to use § 506(a) to strip off the creditor's junior mortgage. 187 B.R. at 190. *Nobelman* was found only applicable to partially secured security interests in the debtor's principal residence. *Id.* The opinion distinguished *Nobelman* from the case presented there of a creditor with a wholly unsecured security interest, as determined through a § 506(a) valuation. It concluded that the creditor's claim, lacking any secured component, was actually unsecured when bankruptcy was filed and could be modified under § 1322(b)(2). *Id.*

The opinion in *Wright v. Commercial Credit Corp.* stated, "[t]his Court agrees with the overwhelming number of bankruptcy courts that have determined that *Nobelman* does not apply where a creditor's claim is completely unsecured." 178 B.R. at 707. The court justified its holding by reasoning "[w]here there is no value underlying the claim, there is not a secured claim, despite the existence of a document to the contrary." *Id.*

Other courts, however, have denied a debtor's attempt to strip off a secured creditor's security interest for lack of equity in the debtor's principal residence. *See In re Neverla*, 194 B.R. 547 (Bankr.W.D.N.Y.1996); *In re Jones*, 201 B.R. 371 (Bankr.D.N.J.1996).

*Neverla* and *Jones* acknowledged, but rejected, the large number of cases supporting a stripoff. *Jones*, for example, found that reliance by some judges on the "still the holder" dicta from *Nobelman*, 508 U.S. at 329, 113 S.Ct. at 2110, was out of context with the rest of the *Nobelman* decision. Indeed, those dicta-based holdings allowing the "strip off" recreated the loophole *Nobelman* attempted to close and misread *Nobelman*'s focus on the rights of secured creditors with security interests only in the debtor's principal residence. *In re Jones*, 201 B.R. at 373, 374.

Rather than relying on dicta in *Nobelman*, *Jones* held that the proper reading of that opinion was as an endorsement of creditor rights, where "rights" were defined by state law and the underlying mortgage contract. *Id.* at 374. A court analyzing a "stripoff" situation in Chapter 13, therefore, should look first to whether the creditor holds a mortgage secured only by the debtor's principal residence. If so, the creditor's rights under § 1322(b)(2) may not be modified regardless of the presence or absence of underlying equity in the residence, and there is no right to look to § 506(a) for valuation. A mortgage stripoff epitomizes a modification of creditor rights and is not allowed in Chapter 13 under § 1322(b)(2) and *Nobelman*.

Reliance on the "still the holder" dicta in *Nobelman* yields an absurd result. If § 1322(b)(2)'s protection against modification were limited solely to security interests with underlying collateral, junior mortgagees with a single penny of equity in collateral in the debtor's principal residence would still retain complete protection from a stripdown while junior mortgagees who lacked that penny of equity would find their entire claim stripped off. *Nobelman* did not foster this absurd result because that decision did not delineate that any level of equity protecting the secured creditors is required for § 1322(b)(2) protection. Instead, *Nobelman* flatly held that "[s]ection 1322(b)(2) prohibits [a § 506(a)] modification where, as here, the lender's claim is secured only by a lien on the debtor's principal residence." 508 U.S. at 332, 113 S.Ct. at 2111.

Moreover, the Debtors' argument would make a mockery of the Chapter 13 Plan confirmation process and would make their commitments to secured creditors at the time of confirmation wholly contingent on future fluctuations of the collateral market value. In this case, for example, the assertion of collateral value is as of many months after Debtors' Plan was confirmed. If they could assert the § 506(a) argument at all in Chapter 13, there is nothing in that provision that limits it to pre-confirmation value. It could therefore be read to make the whole Chapter 13 confirmation process provisional and tentative, binding only on secured creditors who must accept payments thereunder as adequate protection of their interest, but subject to being reopened by debtors later should the property value fall.

In Illinois, as in Texas where *Nobelman* arose, creditors' rights defined by state law and the underlying mortgage contract are the same. A creditor's statutory protection, therefore, includes the right to accelerate and foreclose on the loan because of a debtor's default, *see* S.H.A. 735 ILCS 5/15–1501(b)(10) (Supp.1996) (allowing any mortgagee to become a party to a judicial foreclosure), and includes the right to recover any deficiency after foreclosure, *see* S.H.A. 735 ILCS 5/15–1504(f) (allowing a mortgagee to request a deficiency judgment if its lien is not fully compensated in a foreclosure). In addition, AGF, as creditor, also holds contract rights against Debtors, including the right to be paid back over the term of the loan and the right to retain its lien, secured by Debtors' principal residence, until full payment is made. Thus, AGF stands in the same position as did the creditor in *Nobelman*.

Debtors argue that bifurcation of a security interest under § 506(a) results in secured and unsecured components that are reflective of economic reality as between senior and junior lienors. They also argue that the stripping down of liens after a § 506(a) bifurcation is acceptable because of the lack of adverse effects on the home mortgage industry. The Debtors' argument in this regard is that Congress, by revising § 506(a) in 1978, intended to inject economic reality into the valuation of secured claims. Pl.'s Br. at 8–11.

Notwithstanding that policy argument, a creditor's security interest in the debtor's principal residence is not modifiable in a Chapter 13 proceeding because of the plain language of § 1322(b)(2) and *Nobelman*. Section 1322(b)(2) does not discriminate, on its face, between a mortgagee holding a senior mortgage and subsequent mortgagees holding junior mortgages. Furthermore, despite the concurring opinion in *Nobelman*, which attributed the protection of § 1322(b)(2) to the home lending market, neither the majority opinion nor the language of the statute limits the holding to senior lienors. *Nobelman*, 508 U.S. at 332, 113 S.Ct. at 2111–12 (Stevens, J., concurring). If Congress intended the prohibition against modification in § 1322(b)(2) to be limited only to certain mortgages, it could have drafted the section to reflect the limitation.

## CONCLUSION

The Debtors' attempt to strip off the Creditor's security interest in the Debtors' principal residence finds no support in either § 1322(b)(2) or *Nobelman*. Our jurisprudence requires respect for a clear ruling by the United States Supreme Court. For a debtor in Chapter 13, § 1322(b)(2) trumps § 506(a).

Generally, the debtor will file in Chapter 13 in order to save some property. The tradeoff is that to save such property the debtor must pay for it by paying mortgages as well as Plan payments out of future income. Until Congress chooses to limit § 1322(b)(2) in some way, all mortgagees holding security interests in a debtor's principal residence receive protection against any modification of their rights, and may receive increased economic protection of their interest from growing real estate value over the three to five year life of the Plan. Should that value rise, the creditor stands to benefit thereby, and the debtor may not capture such increase in value through a § 506(a) stripoff.

Accordingly, by separate order, American General Finance's motion to dismiss the Adversary Complaint will be granted. Dismissal will be with prejudice because no repleading could justify the relief sought.