**In re John E. MONCRIEF, Eliza Moncrief, Debtors.**

**Bankruptcy No. 92–50383.**

United States Bankruptcy Court, E.D. Kentucky, Lexington Division.

June 18, 1993.

James L. Hayden, Lexington, KY, for debtors.

Castil Williams, Lexington, KY, for TransAmerica Financial Corp.

### *MEMORANDUM OPINION*

JOE LEE, Chief Judge.

This case is pending on the motion of the debtors pursuant to 11 U.S.C. § 506 to avoid the second mortgage of TransAmerica Financial Corporation on real property located at 102 Washington Drive, Richmond, Kentucky, the debtors' principal residence.

The debtors filed a joint petition for relief under chapter 13 of the Bankruptcy Code on February 21, 1992. Their plan provides for the curing of arrearages on the first mortgage indebtedness of Farmers Home Administration on their residence and maintenance of mortgage payments of $258.00 per month by direct payment to FHA during the life of the plan. According to the proof of claim filed by FHA the prepetition arrearage to be paid by the chapter 13 trustee from monies paid to him by the debtors is $566.00.

The plan provides for the surrender of a 1987 Ford Mustang to Bank One toward satisfaction of the claim of that creditor in the amount of $8,931.17. Bank One has subsequently filed an amended claim as an unsecured claim in the amount of $1,742.28, rep-

resenting the deficiency claim remaining after credit of the proceeds from the sale of the motor vehicle.

The plan provides for payment in full of the unsecured claim of The Bank of Whitesburg in the amount of $11,624.28, for which the husband's grandmother, Elizabeth Moncrief, is obligated as a guarantor, and for payment of the claims of holders of other unsecured claims to the greatest extent possible from monies paid to the trustee by the debtors during the 60–month duration of the plan. Pursuant to the plan as confirmed by the court the debtors are paying the chapter 13 trustee $250.00 per month by payroll deduction for payment of claims of creditors.[1] Thus the debtors are obligated to pay the trustee $15,000 during the life of the plan.

Paragraph (11) of the plan provides that the second mortgage of TransAmerica on the residence of the debtors will be avoided pursuant to 11 U.S.C. § 506(d). The motion of the debtors to avoid the lien of TransAmerica is in conformity with the proposed treatment of this claim under the plan.

The first mortgage indebtedness to FHA on the debtors' residence is listed in the schedules to the petition as $37,000. However, according to the proof of claim of FHA the balance due on the mortgage on the date of the commencement of this case was $40,048.01.

In the schedules to their petition the debtors value their residence at $36,000. Prior to the hearing on confirmation of the plan TransAmerica filed a motion for relief from stay with an accompanying proof of claim alleging the debtors are indebted to TransAmerica in the amount of $4,563.53. The motion alleged that the debtors have no equity in their residence and that they had made no payments to TransAmerica since filing the chapter 13 petition. The hearing on this motion was treated as a preliminary hearing and the final hearing was continued until the date of hearing on confirmation of the plan. The stay was continued in effect until that date.

At the hearing on confirmation of the plan the parties agreed to the appointment of an appraiser to fix the value of the debtors' residence for the purpose of determining how the claim of TransAmerica shall be allowed for purposes of distribution under the plan. The appraiser's report fixes the value of the residence at $38,000, some $2,000 less than the indebtedness to FHA on the first mortgage on the residence.

The debtors acquired their residence by quitclaim deed from FHA on October 20, 1989 for $37,000. Approximately two years later the debtors borrowed $4,348.58 from TransAmerica. In connection on their loan application to TransAmerica the debtors allegedly valued their residence at $43,000 and TransAmerica allegedly appraised the property for that amount. Memorandum in Opposition to Debtors' Motion to Avoid Lien and Objection to Debtors' Evaluation of Collateral, p. 2. Under TransAmerica's analysis its claim would be a secured claim to the extent of $3,000.00.

The report of the court appointed appraiser is thorough. The court accepts his appraisal as accurate and finds the value of the real property in question to be no greater than $38,000.

## CONCLUSIONS OF LAW:

Upon the filing of this chapter 13 case the debtors' residence became property of the estate. The estate acquires the property subject to liens and encumbrances. The mortgage held by FHA exceeds the value of the residence by $2,000.

By application of title 11 U.S.C. § 506(a) the claim of TransAmerica is a secured claim to the extent of the value of such creditor's interest in the estate's interest in the residence. In view of the fact the debtors had no interest in their residence over and above the indebtedness to FHA the estate acquired no interest in the property to which the mortgage of TransAmerica may attach. Accordingly, the claim of TransAmerica is wholly unsecured.

---

1. TransAmerica did not object to confirmation of the plan; its objection is to the proposed treatment of its claim for purposes of distribution under the plan. It is clear, however, that the order of confirmation would have to be set aside if it were determined that modification of the "rights" of TransAmerica as evidenced by its mortgage is impermissible.

Section 1322(b)(2) of the Bankruptcy Code, 11 U.S.C. § 1322(b)(2), provides that a chapter 13 plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

This section does not preclude modification by a chapter 13 plan of the "rights" of holders of unsecured claims. It does restrict modification of the "rights" of holders of secured claims secured only by a security interest in real property that is the debtor's principal residence. In order to escape modification a claim must be "secured" to some extent by a "security interest"[2] in real property that is the debtor's principal residence.

Under 11 U.S.C. § 506(d), to the extent that the lien of TransAmerica evidenced by its proof of claim secures a claim against the debtor that is not an allowed secured claim the lien is void. Therefore, the claim of TransAmerica is not "secured" by a security interest in the debtor's principal residence.

As this court reads the opinion of the Supreme Court in *Nobelman, et ux. v. American Savings Bank, et al.,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the claim of TransAmerica must be at least partially secured by a security interest in the debtors' residence in order to preclude modification of the claim under 11 U.S.C. § 1322(b)(2). Modification of this wholly unsecured claim is obviously permissible under § 1322(b)(2). Apparently, modification would be impermissible if the claim of TransAmerica were secured to the extent of one dollar or perhaps one penny. But since TransAmerica's claim is totally unsecured, the motion of the debtors to avoid the lien of TransAmerica on the debtors' residence shall be sustained, and the claim of TransAmerica shall be allowed as an unsecured claim for purposes of distribution in this case.

---

2. A "security interest" means a lien created by an agreement. 11 U.S.C. § 101(51); a "security agreement" means agreement that creates or provides for a security interest. 11 U.S.C. § 101(50). A "lien" means charge against or interest in property to secure payment of a debt or performance of an obligation. 11 U.S.C. § 101(37).