In The Matter of Raymond A. PLOUFFE, Cherilyn R. Plouffe, Debtors.

Bankruptcy No. 2–93–00996.

United States Bankruptcy Court, D. Connecticut.

Aug. 18, 1993.

Gilbert L. Rosenbaum, Hartford, CT, Chapter 13 Trustee.

David F. Falvey, Groton, CT, for debtors.

Jeffrey R. Godley, Brown, Jacobson, Tillinghast, Lahan & King, P.C., Norwich, CT, for Norwich Sav. Society, Objector.

## MEMORANDUM OF DECISION ON OBJECTION TO CONFIRMATION OF A CHAPTER 13 PLAN

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

### *ISSUE*

The United States Supreme Court in *Nobelman v. American Savings Bank,* 508 U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) decided that Bankruptcy Code "§ 1322(b)(2)[1] prohibits a Chapter 13 debtor from relying on § 506(a)[2] to reduce an undersecured homestead mortgage to the fair market value of the mortgaged residence." *Nobelman,* 508 U.S. at ——, 113 S.Ct. at 2108, 124 L.Ed.2d at 233. The question presented in this proceeding is whether § 1322(b)(2) also prohibits the debtor from relying on § 506(a) to reduce a wholly unsecured second mortgage on such premises to a value of zero as a secured claim and thereafter to treat the entire debt in the plan as an unsecured claim.

The parties have submitted the matter upon briefs, there being no dispute on the facts.

---

1. *§ 1322. Contents of plan.*

    .    .    .     .     .

(b) ... the plan may—

    .    .    .     .     .

   (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

2. *§ 506. Determination of secured status.*

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, ..., is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ..., and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

## II.

### BACKGROUND

Raymond A. Plouffe and Cherilyn R. Plouffe, the debtors, filed a joint Chapter 13 petition on March 16, 1993. The court, after notice and hearing, pursuant to Fed. R.Bankr.P. 3012 [3] entered an order which determined that the value of the debtors' principal residence was $136,000.00; that the residence was subject to a first mortgage in the unpaid balance of $136,000.00 payable to Citicorp Mortgage, Inc. (Citicorp), and subject to a second mortgage in the unpaid balance of $28,444.17 payable to The Norwich Savings Society (Norwich). The court order found the Norwich mortgage "to be secured in the amount of $0.00 and unsecured in the amount of $28,444.17."

The debtors thereafter sought confirmation of a Chapter 13 plan which provides that the Norwich claim be treated as an unsecured claim pursuant to § 506(a). Under the plan, unsecured claims, except for a claim of the State of Connecticut Office of Adult probation, receive nothing. The plan requires the debtors to pay $599.00 monthly to the Chapter 13 trustee for sixty months, with the major portion of such funds to go to the curing of a mortgage arrearage due Citicorp.

Norwich objects to confirmation, contending "under section 1322(b)(2) of the Code, as interpreted by *Nobelman*, that its rights cannot be modified, and making Norwich an unsecured creditor is an impermissible modification of its rights." *Norwich Memorandum* at 4. The debtors argue that a wholly unsecured second mortgage debt may be dealt with in a Chapter 13 plan other than by full payment according to the mortgage contract terms.

## III.

### DISCUSSION

■ The resolution of the issue presented depends upon the proper analysis of the *Nobelman* ruling. Norwich emphasizes that Justice Thomas, for the unanimous Supreme Court, noted that § 1322(b)(2) "does not state that a plan may modify 'claims' or that the plan may not modify 'a claim secured only by' a home mortgage. Rather, it focuses on the modification of the *'rights of holders'* of such claims." *Nobelman*, 508 U.S. at ——, 113 S.Ct. at 2109, 124 L.Ed.2d at 234. From this statement, Norwich posits that as it holds a mortgage on the homestead, the protection of the rights of a mortgagee afforded by § 1322(b)(2) does not depend on whether there is any equity in the homestead available to Norwich. Norwich asserts its state-law rights, including the right to retain its lien until the debt is paid off, remain enforceable, and the debtors' plan may not be confirmed. The Chapter 13 trustee supports Norwich's argument.

The debtors draw a contrary conclusion from *Nobelman.* They point out that *Nobelman* recognizes that Chapter 13 debtors can properly "look[ ] to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim", and that "[i]t was permissible for [debtors] to seek a valuation in proposing their Chapter 13 plan, since § 506(a) states that '[s]uch value shall be determined ... in conjunction with any hearing ... on a plan affecting such creditor's interest.'" *Nobelman*, 508 U.S. at —— – ——, 113 S.Ct. at 2110, 124 L.Ed.2d at 234–35. Relying on these statements, the debtors assert that *Nobelman* requires that the mortgage holder have some equity in the homestead to be entitled to the status of a secured claim holder, with nonmodifiable rights. In this proceeding, Norwich has judicially been determined under § 506(a) to hold no secured claim because the value of its "interest in the estate's interest in such property" is zero. Norwich, accordingly, holds only an unsecured claim. Section 1322(b)(2) authorizes the debtors' plan to "modify the rights ... of holders of unse-

---

**3.** *Rule 3012. VALUATION OF SECURITY.*
   The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct.

cured claims." *See* § 1322(b)(2), *supra* note 1.

■ I conclude that the debtor's argument as to the teachings of *Nobelman* is the more persuasive. I find it evident from the *Nobelman* ruling that for a homestead mortgagee to claim the protection against modification granted by § 1322(b)(2), the mortgagee must qualify as the holder of a secured claim to some extent as determined by § 506(a).[4] There is neither a logical nor rational basis for a creditor holding a completely unsecured claim to be protected from claim modification in a bankruptcy case simply because the creditor had obtained a lien on the homestead prepetition. "[T]reatment under the Code turns on whether a *claim* is secured or unsecured, not whether a *creditor* is secured or unsecured." *In re Bellamy*, 962 F.2d 176, 179 (2d Cir.1992). *Cf. LaPointe v. Snelling & Snelling, Inc., (In re LaPointe)*, 150 B.R. 92, 95 (Bankr,Conn.1993) (section 522(f)(1) does not permit creditor's wholly unsecured judicial lien to remain on debtor's residence because contrary to fresh-start principle of bankruptcy).

Justice Stevens, in his concurring opinion in *Nobelman*, wrote that the Court's "literal reading of the text of the statute is faithful to the intent of Congress." *Nobelman*, 508 U.S. at ——, 113 S.Ct. at 2112, 124 L.Ed.2d at 237. The intent to which Justice Stevens referred was "favorable treatment of residential mortgagees ... to encourage the flow of capital into the home lending market." *Id.* There are no such concerns when dealing with the second mortgage market. *See generally* Veryl Victoria Miles, *The Bifurcation of Undersecured Residential Mortgages Under § 1322(b)(2) of the Bankruptcy Code: The Final Resolution*, 67 Am.Bank.L.J. 207, 285 (1993) (junior lienholders who may take mortgages against oversecured property do not merit creditor protection by Congress). Further, a literal reading of § 1322(b)(2) *does* exclude a mortgagee whose secured interest in the homestead is zero.

It is not consistent with the statutory scheme of Chapter 13, and the Bankruptcy Code's bifurcated treatment of a [sic] secured and unsecured claims ... to assume that a junior mortgagee on real property which is already overburdened by senior mortgages, could insist on being treated as a creditor with a secured claim and insist on full payment of its claim based upon the pre-petition contractual arrangement with the debtor. It would appear that in that instance the Court would be constrained to find, pursuant to § 506(a) of the Bankruptcy Code, that the junior mortgagee was in fact the holder of an unsecured claim and thus was unable to invoke the protection of § 1322(b)(2) and prevent confirmation a Chapter 13 plan.

*In re Neal*, 10 B.R. 535, 537 (Bankr. S.D.Ohio 1981).

The Bankruptcy Code fixes creditors' rights to payment, with different treatment to claims, dependent on whether they are secured or unsecured. *In re Bellamy*, 962 F.2d at 180. Norwich is not the holder of a secured claim, and for the purposes of § 1322(b)(2), only its rights as the holder of an unsecured claim are being modified by the debtors' plan.

## IV.

### CONCLUSION

The objection of The Norwich Savings Society to the debtor's Chapter 13 plan must be, and hereby is, overruled.

---

**4.** "But even if we accept petitioners' valuation, the bank is still the 'holder' of a 'secured claim', because petitioners' home retains $23,500 of value as collateral." *Nobelman*, 508 U.S. at ——, 113 S.Ct. at 2110, 124 L.Ed.2d at 235.