**In re Ronnie Clay WILLIAMS, Patricia Lee Williams, Debtors.**

**Bankruptcy No. 93–10010.**

United States Bankruptcy Court, E.D. Kentucky, Ashland Division.

Nov. 10, 1993.

---

Daniel H. Mason, Morehead, KY, for debtors.

George O. Pearson, Lexington, KY, for Bank of the Mountains.

Sidney N. White, Lexington, KY, Chapter 13 Trustee.

## MEMORANDUM OPINION

WILLIAM S. HOWARD, Bankruptcy Judge.

This case was originally filed as a Chapter 7 case; it was converted to a Chapter 13 case on May 14, 1993. The matter before the Court is the motion of creditor Bank of the Mountains ("the Bank") for relief from stay, filed herein on May 5, 1993. The debtors had filed a Response to the Motion on May 12, 1993. The Court heard this matter on August 5, 1993 and additional briefing time was given before the matter was taken under submission. Debtors filed a further Response on August 13, 1993. The Bank filed its Memorandum in Support of its Motion on August 16, 1993.

The question before the Court involves a further variance of the question before the Supreme Court in the case of *Nobelman v. American Savings Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). The debate centers around the debtors' desire to strip off (as opposed to "down") the Bank's lien against their residence. The lien in question is a second mortgage lien and it appears that the property is worth less than the balance due on the note secured by the first mortgage. The ultimate question to be reached is whether the *Nobelman* rationale applies to prohibit the stripping off of the Bank's lien which, if bifurcated by applying 11 U.S.C. § 506(a), would have no truly secured component since there appears to be no equity in the property upon which this lien can attach because of the senior lien.

■ An initial question must first be addressed. The debtors contend that the credit life insurance written on this loan in favor of the Bank and the requirement in Bank's mortgage that the debtors maintain hazard insurance constitute other collateral and thus the terms of 11 U.S.C. § 1322(b)(2) are inapplicable. The Bank argues that its only security is a second mortgage on the debtors' principal residence and that the credit life insurance and the hazard insurance do not remove the Bank's lien from those described in 11 U.S.C. § 1322(b)(2) as "... a claim secured only by a security interest in real property that is the debtor's principal residence...."

The question of whether or not the requirement of the lender that the borrower maintain hazard insurance in lender's favor takes the lender outside the protection of 11 U.S.C. § 1322(b)(2) has been clearly addressed in this circuit. *In re Davis*, 989 F.2d 208 (6th Cir.1993). This requirement does not constitute other security so as to deprive the otherwise qualifying lender of the protection of that statute.

Several courts have considered the matter of credit life or disability insurance with differing results. Among the decisions finding that the requirement of credit life or disability insurance constitutes additional security and therefore removes the loan in question from those secured only by a mortgage on real property which is the debtor's principal residence are *In re Selman*, 120 B.R. 576 (Bankr.D.N.M.1990) and *Transouth Financial Corp. v. Hill*, 106 B.R. 145 (W.D.Tenn. 1989). Several other courts have held that the existence of credit life or disability insurance do not take the creditor's claim outside the statute: *In re Amerson*, 143 B.R. 413 (Bankr.S.D.Miss.1992); *Matter of Washington*, 967 F.2d 173 (5th Cir.1992); *In re Braylock*, 120 B.R. 61 (Bankr.N.D.Miss.1990); *In re Ireland*, 137 B.R. 65 (Bankr.M.D.Fla. 1992); *United Companies Financial Corp. v. Davis*, 148 B.R. 16 (W.D.La.1992). A review of these authorities convinces this Court that the mere existence of credit life insurance does not constitute additional collateral and thus the Bank here is not outside of the protections afforded by § 1322(b)(2) for this reason.

■ The debtors' Chapter 13 plan proposes to treat the Bank as the holder of an unsecured claim even if the Court finds, as above, that the only security which the Bank has is a mortgage lien on real property which is the debtors' principal residence because it has no interest in the collateral since, debtors contend, the property is worth less than the amount owed on the first mortgage. The Bank maintains that the Supreme Court's *Nobelman* decision requires that its "rights" as a mortgage holder be protected from modification pursuant to 11 U.S.C. § 1322(b)(2), its status as a "secured" or "unsecured" creditor aside.

The debtors argue that since § 1322(b)(2) deals with the rights of holders of secured claims, the creditor must show that it is the holder of such a secured claim (secured by some equity in the property) before the protection of § 1322(b)(2) applies. In *Nobelman*, the creditor was a first mortgage holder and the debtors sought to bifurcate its claim into secured and unsecured components and reduce the undersecured mortgage to the fair market value of the residence pursuant to 11 U.S.C. § 506(a).

Section 506(a) provides that a claim is secured only to the extent of the value of the creditor's interest in the estate's interest in the collateral. The Bank has no secured component of its claim, according to this reasoning, because the estate has no interest in the property. Therefore the § 1322(b)(2) prohibition of modification of rights of secured creditors as set out in *Nobelman* would not apply. At least two bankruptcy courts have considered this matter post-*Nobelman* and reached the same result. In a recent Lexington Division case in this District cited by debtors, *In re Moncrief*, 163 B.R. 492 (Bankr.E.D.Ky.1993), Judge Joe Lee applied this reasoning to find that since the mortgagee's claim was totally unsecured, the debtors could avoid its lien on their residence. See also *In re Plouffe*, 157 B.R. 198 (Bankr. D.Conn.1993). It appears that *Collier on Bankruptcy*, 15th Ed., agrees at Vol. 5, § 1322.06[1][a], p. 1322–16 as follows:

> The *Nobelman* opinion strongly suggests, however, that if a lien is completely undersecured, there would be a different result. The opinion relies on the fact that, even after bifurcation, the creditor in the case was "still the 'holder' of a 'secured claim' because petitioners' home retain[ed] .$23,000 of value as collateral." If the creditor had held a lien on property that had no value (perhaps because the property was fully encumbered by prior liens), then under this analysis it would not have been a "holder of a secured claim" entitled to protection by section 1322(b)(2).

This Court agrees with these authorities and is persuaded by the language used in *Nobelman* that the "... Petitioners were

correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim ..." (at page 2110) is meaningless unless some portion of the claim must be secured under § 506(a) analysis before the creditor is entitled to retain the rights it has under state law. This appears to accord, at least in part, with the asserted purpose of affording protection to enabling mortgage lenders while it also discourages opportunistic junior lienholders from acquiring a lien unsupported by value at inception of the loan merely for the purpose of defeating any subsequent Chapter 13 plan.

For the reasons set out above the Motion for Relief from the Stay filed by the Bank should be overruled. A separate order will be entered.