**In re Tam Ly LAM and Mai Thi Lam, Debtors.**

**Tam Ly LAM and Mai Thi Lam, Appellants,**

v.

**INVESTORS THRIFT and United States Trustee, Appellees.**

**BAP No. NC–96–1773–HRyO.**
**Bankruptcy No. 94–57338 JRG.**
**Adversary No. 95–5398.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 20, 1997.

Decided July 3, 1997.

David A. Boone, San Jose, CA, for debtors.

Before: HAGAN, RYAN, and OLLASON, Bankruptcy Judges.

### OPINION

**PER CURIAM.**

Tam Ly and Mai Thi Lam ("Debtors") appeal an order of the bankruptcy court denying their request for entry of a default judgment against Investor's Thrift ("Thrift"), and an order dismissing the Debtor's adversary proceeding. We reverse and remand.

---

**1.** Unless otherwise indicated, all references to "chapter" and "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and all references to "rule" are to the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") 1001–9036, which make applicable certain Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

**2.** The Debtors' requested relief would amount to what is commonly referred to as a lien "strip off"

## FACTS

On November 17, 1994, the Debtors filed for relief under chapter 13, title 11, United States Code.[1] In their schedules they listed one parcel of real property, located in Milpitas, California. The property, the Debtors' primary residence, has an undisputed fair market value of $300,000.00. The property is encumbered as follows:

Chase Manhattan Bank (first deed of trust) $164,222.00

Boston Company (second deed of trust) $61,824.00

Tracy Federal (third deed of trust) $560,-000.00

Thrift (fourth deed of trust) $17,193.00.

These encumbrances total $803,239.00. There is no dispute as to the value of the amounts remaining due on the encumbrances, or that the Chase Manhattan, Boston Company, and Tracy Federal liens are superior to Thrift's deed of trust.

On August 9, 1995, the Debtors filed an adversary proceeding, the subject of this appeal, against Thrift. The prayer of the complaint asked the bankruptcy court to enter a judgment holding the Thrift lien to be an "unsecured lien and therefore to be treated as an unsecured claim" and that the lien has "no further force and effect as a secured lien against the Debtors' residential property."[2]

The Debtors applied for the entry of default against Thrift for failure to file an answer or otherwise appear in the adversary proceeding.[3] On August 8, 1996, the bankruptcy court in a written decision denied the request for entry of the default judgment and, further, dismissed the adversary proceeding based on the United States Supreme Court case of *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). The Debtors timely ap-

---

since the entire lien is removed, as opposed to a lien "strip down". In the latter instance, a partially secured lien is bifurcated and only the unsecured portion is removed, or "stripped down". *In re Woodhouse*, 172 B.R. 1, n. 1 (Bankr.D.R.I.1994).

**3.** Thrift elected not to oppose the relief sought by Debtors.

pealed both orders. Thrift, in addition to not appearing in the adversary proceeding in the bankruptcy court, has not appeared in the appeal.

### ISSUE ON APPEAL

Did the court err in ruling that *Nobelman* prohibited the removal of a totally unsecured lien from the Debtors' personal residence, resulting in the denial of the Debtors' request for the entry of default and the dismissal of the Debtors' adversary proceeding.

### STANDARD OF REVIEW

A bankruptcy court's conclusions of law are reviewed *de novo. Tully v. Taxel (In re Tully)*, 202 B.R. 481, 483 (9th Cir. BAP 1996); *In re United States Trustee*, 32 F.3d 1370, 1372 (9th Cir.1994). We review the denial of a default judgment under Rule 55(b), Fed.R.Civ.P., for abuse of discretion. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir.1986); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092–93 (9th Cir.1980).

### DISCUSSION

#### I.

The facts are undisputed. Based on the current fair market value of the Debtors' real property, the fourth deed of trust held by Thrift is wholly unsecured.

Section 1322(b)(2) allows a debtor's plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence."[4] The Debtors wish to modify Thrift's purported secured claim by having it declared an unsecured claim. The Thrift claim is a totally unse-

---

4. (b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.
11 U.S.C. § 1322(b)(2).

5. (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent

---

cured claim since no security interest attaches to Thrift's lien.

The *Nobelman* case settled a conflict between the Circuit Courts of Appeal by holding that section 1322(b)(2) prohibits the removal or "strip off" of the unsecured portion of an undersecured claim from a chapter 13 debtor's personal residence.

In *Nobelman*, the debtors had proposed, in their chapter 13 plan, to bifurcate a creditor's undervalued claim of $71,335, secured by the debtor's principal residence, into a secured claim of $23,500, the uncontroverted valuation of the home, with the remainder unsecured. The debtor's plan then provided for the removal of the unsecured remainder, under sections 506 and 1322(b)(2), reducing the mortgage to its fair market value.

*Nobelman* held that section 1322(b)(2) bars a chapter 13 plan from modifying the rights of holders of claims, secured only by the debtor's principal residence including the undervalued claim. In reaching this holding, the Supreme Court analyzed the language of section 1322, and found it focused on the rights of holders of secured claims rather than on the value of the claim.

In *Nobelman*, the debtors had argued that since § 506(a)[5] designates a claim as secured only to the extent of the value of the property, the unsecured portion of the claim could be "modified" or removed under section 1322(b)(2). Since the debtors' plan was to pay off the secured portion of the mortgage through payments, section 1322(b)(2) allowed unconditional modification of the bank's leftover, unsecured claim. The Supreme Court held the interpretation by the debtors:

of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a).

[F]ails to take adequate account of § 1322(b)(2)'s focus on 'rights.' That provision does not state that a plan may modify 'claims' or that the plan may not modify 'a claim secured only by' a home mortgage. Rather, it focuses on the modification of the 'rights of holders' of such claims. By virtue of its mortgage contract with petitioners, the bank is indisputably the holder of a claim secured by a lien on petitioner's home.

*Nobelman,* 508 U.S. at 328, 113 S.Ct. at 2109–10.

Justice Thomas, writing for a unanimous court, noted that the bank was the holder of a secured claim because "petitioners' home retains $23,500 of value as collateral. The portion of the bank's claim that exceeds $23,-500 is an 'unsecured claim componen[t]' under § 506(a), however, that determination does not necessarily mean that the 'rights' the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim." *Id.* at 329, 113 S.Ct. at 2110 (citing *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 239 n. 3, 109 S.Ct. 1026, 1029 n. 3, 103 L.Ed.2d 290 (1989)).

The Supreme Court assumed that Congress had left the interpretation of the mortgagor's rights to state law, since "[p]roperty interests are created and defined by state law." *Id.* at 329, 113 S.Ct. at 2110. The Court then held that under Texas law, the mortgagor had rights reflected in the mortgage documents, enforceable under state law.

[T]hey included the right of repayment of the principal and monthly installments over a fixed term and specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure.... These are the rights that were 'bargained for by the mortgagor and the mortgagee.'

*Id.* at 329–330, 113 S.Ct. at 2110.

## II.

In the instant case, the bankruptcy court concluded the foregoing language, quoted from *Nobelman,* prohibited the Debtors from removing the unsecured Thrift lien regardless of the fact that the claim of the creditor, Thrift, was totally unsecured, as opposed to the partially unsecured situation in *Nobelman.* In the order denying request for default judgment, issued on August 8, 1996, the bankruptcy court focused on the "rights" of a holder of a claim secured by real property and concluded the holding of *Nobelman* provides:

[E]ven wholly unsecured creditors with a security interest in real property that is the debtor's principal residence have State law rights which cannot be modified in a Chapter 13 plan. Plaintiffs' request for a default judgment must be denied on the basis that the substantive merits of plaintiffs' claim do not entitle them to judgment. Since plaintiffs are not entitled to a judgment, the action must be dismissed.

The bankruptcy court further adopted the interpretation of *Nobelman* advanced by Judge Keith M. Lundin in his treatise on chapter 13 bankruptcy. See Lundin, Keith M., *Chapter 13 Bankruptcy,* 2nd Edition, § 4.46, p. 4–56. In that treatise, Judge Lundin concludes the protection of section 1322(b) extends to the wholly undersecured lien creditor based on the rights analysis of *Nobelman.* Judge Lundin's analysis, quoted by the bankruptcy court in its decision, states:

Although the bank's claim in *Nobelman* was partially secured by real property that was the debtor's principal residence, Justice Thomas's analysis ties the protection from modification in § 1322(b)(2) to the existence of a "claim" secured by a lien on real property, without regard to whether the claim holder would also have an allowed secured claim after valuation and analysis under § 506(a). The clear implication of this analysis is that even a completely *unsecured* claim holder "secured" only by a lien on real property that is the debtor's principal residence would be protected from modification by § 1322(b)(2), notwithstanding that such an "unsecured" lienholder could not have an allowable secured claim under § 506(a). Although the

concept of an "unsecured secured claim" is impossible under § 506(a), Justice Thomas's focus on the "rights" of the "holders" of a "claim secured only by ..." in § 1322(b)(2) extends the protection from modification to claims that are secured by a lien on the debtor's principal residence, without regard to the allowance or disallowance of secured claims under § 506(a). In other words, the trigger for Justice Thomas's protection of rights analysis is the existence of a lien, not the presence of value to support the lien.

### III.

▇▇ We disagree with the bankruptcy court's analysis. The *Nobelman* decision prohibiting the removal of a partially unsecured claim is decidedly different from requiring a chapter 13 debtor to continue to pay the mortgage contract when the mortgage lien attaches to nothing and the lien ceases to be a secured claim. Justice Thomas's statements were made in the context of the issue before the Supreme Court: the bifurcation of a claim partially secured and partially unsecured.

The basic concept of the bankruptcy judge's analysis is that the mere presence of the lien carries with it certain rights regardless of whether the lien has validity as a lien. A lien is "A charge or security or incumbrance upon property." (Black's Law Dictionary, Fourth Edition 1968). If a lien has no "security" interest in the property of a debtor, its status as a lien is questionable.

An analysis of the state law "rights" afforded a holder of an unsecured "lien", if such a situation exists, indicates these rights are empty rights from a practical, if not a legal, standpoint. A forced sale of the property would not result in any financial return to the lienholder, even if a forced sale could be accomplished where the lien attaches to nothing. Nothing secures the "right" of the lienholder to continue to receive monthly installment payments, to retain the lien until the debt is paid off, or the right to accelerate the loan upon default, if there is no security available to the lienholder to foreclose on in the event the debtor fails to fulfill the contract payment obligations.

A number of cases extend *Nobelman's* analysis to allow modification of the secured creditor's claim when it is totally unsecured under Code § 506(a).[6] In allowing the modification of the secured creditor's rights, these courts relied primarily on the *Nobelman* court's use of section 506(a) to define the phrase in section 1322(b)(2) "holder of secured claim." For example, in *In re Plouffe,* 157 B.R. 198, 200 (Bankr.D.Conn.1993), the court concluded that it is "evident from the *Nobelman* ruling that for a homestead mortgagee to claim the protection against modification granted by § 1322(b)(2), the mortgagee must qualify as the holder of a secured claim to some extent as determined by § 506(a)." Similarly, in *In re Williams,* 161 B.R. 27, 29–30 (Bankr.E.D.Ky.1993),[7] the court stated that *Nobelman's* reference to section 506(a) is "meaningless unless some portion of the claim must be secured under § 506(a) analysis before the creditor is entitled to retain the rights it has under state law."

A leading bankruptcy treatise also adopts this approach:

> The *Nobelman* opinion strongly suggests ... that if a lien is completely undersecured, there would be a different result. The opinion relies on the fact that, even after bifurcation, the creditor in the case was "still the 'holder' of a 'secured claim' because petitioners' home retain[ed] $23,-000 of value as collateral." If the creditor had held a lien on property that had no value (perhaps because the property was fully encumbered by prior liens), then under this analysis it would not have been a

---

6. *In re Hornes,* 160 B.R. 709 (Bankr.D.Conn. 1993); *Matter of Plouffe,* 157 B.R. 198 (Bankr. D.Conn.1993); *In re Lee,* 161 B.R. 271 (Bankr. W.D.Okla.1993); *In re Moncrief,* 163 B.R. 492 (Bankr.E.D.Ky.1993); *In re Kidd,* 161 B.R. 769 (Bankr.E.D.N.C.1993); *In re Williams,* 161 B.R. 27 (Bankr.E.D.Ky.1993).

7. *See also In re Hornes,* 160 B.R. at 716, *In re Lee,* 161 B.R. at 272–73; *In re Moncrief,* 163 B.R. at 494; *In re Kidd,* 161 B.R. at 770–71.

"holder of a secured claim" entitled to protection by section 1322(b)(2).

5 Collier on Bankruptcy, § 1322.06[1][a] at 1322–16 (L. King 15th Ed.1989).

The policies behind section 1322(b)(2) lend further support to this view. The legislative history indicates that Congress intended to distinguish between secured and unsecured claims, rather than between secured and unsecured creditors. *In re Hornes,* 160 B.R. 709, 718 (Bankr.D.Conn.1993); *In re Plouffe,* 157 B.R. at 200. As the *Hornes* court explained, "[t]he code does not generally classify creditors based on the existence of a piece of paper purporting to give a creditor rights in specified collateral, but rather on whether a creditor actually holds a claim supported by valuable estate property." *In re Hornes,* 160 B.R. at 715. Congress' emphasis on claims supports the position that the lienholder must be a holder of a secured claim, rather than merely a holder of a security interest, to be protected from modification under section 1322(b)(2).

Additionally, extending section 1322(b)(2)'s protection to secured creditors holding completely unsecured claims "might induce more debtors who would qualify for chapter 13 relief to file chapter 11 cases, in which all unsecured claims may be treated as such, a more expensive and less expeditious alternative." *Id.* at 719. Moreover, such a result might encourage junior mortgagees to intentionally obtain a mortgage on property that is already overburdened with senior mortgages for the sole purpose of avoiding modification of his or her pre-petition contractual rights. *In re Neal,* 10 B.R. 535, 537 (Bankr. S.D.Ohio 1981); *In re Harris,* 94 B.R. 832, 836 (D.N.J.1989).

Justice Stevens, in his concurring opinion in *Nobelman,* noted that protecting "holders of secured claims" is consistent with the congressional intent of encouraging home lending by residential mortgagees. In *In re Plouffe,* the court interpreted Justice Stevens' opinion as referring to first mortgagees. *In re Plouffe,* 157 B.R. at 200. The court found that "[t]here are no such concerns when dealing with the second mortgage market." *Id.* at 200. Thus, because second mortgages are not in the business of

lending money for home purchases, the same policy reasons for protection of first mortgagees under section 1322(b)(2) do not exist for second mortgagees.

A point of concern is that allowing the modification of a completely undersecured creditor's rights under section 1322(b)(2) will lead to the undesirable result that outcomes of cases will turn on appraisers' estimates of property values. As the court in *In re Lee,* 161 B.R. 271, 273 (Bankr.W.D.Okla.1993) pointed out, the "rights of a mortgagee which is the holder of a secured claim *in any amount,* however slight, may not be modified in any way if that claim is secured only by a security interest in real property that is the debtor's principal residence."

For example, a one dollar difference in property value could have a profound effect on a secured creditor's rights. If property valued at $50,000 is encumbered by a first mortgage of $50,000 and a second mortgage of $20,000, the second mortgage has no secured claim under section 506(a). According to *In re Plouffe* and the other cases following *Nobelman,* the second mortgagee's rights can be completely modified under section 1322(b)(2). However, if an appraiser values the property at $50,001, the second mortgagee has a secured claim of $1 and under *Nobelman* no modification of the secured creditor's rights is permissible under section 1322(b)(2). We believe this concern to be unfounded and that the *In re Plouffe* court has interpreted *Nobelman* correctly in this factual context.

### CONCLUSION

The *Nobelman* decision holding that section 1322(b)(2) bars a chapter 13 plan from modifying the rights of holders of claims, secured only by the debtor's principal residence, does not apply to holders of totally unsecured claims. The extension of the protections of section 1322(b) to wholly undersecured lien holders is contrary to the provisions of the bankruptcy code allowing dischargeability of unsecured claims. We reverse the bankruptcy court's order appealed and remand to the bankruptcy court for the entry of default against Thrift and for

the entry of the relief prayed for in the Debtors' adversary proceeding complaint.