**In re Melvyn M. BAEZ and Jessica J. Baez, Debtors.**

**Bankruptcy No. 99–16396–BKC–AJC.**

United States Bankruptcy Court, S.D. Florida, Miami Division.

Jan. 20, 2000.

Nancy N. Herkert, Hialeah, FL, Standing Chapter 13 Trustee.

Timothy S. Kingcade, Miami, FL, for debtors.

Amy McGrotty, P.A., North Miami Beach, FL, for FirstPlus Financial, Inc.

Enrico G. Gonzalez, Temple Terrace, FL, for Household Finance Corp. III.

***ORDER (i) VACATING JANUARY 10, 2000 ORDER ON CONTESTED CONFIRMATION (ii) OVERRULING OBJECTIONS TO CONFIRMATION AND (iii) ALLOWING VALUATION OF HOMESTEAD PROPERTY AND "STRIP OFF" OF LIENS***

A. JAY CRISTOL, Bankruptcy Judge.

THIS CAUSE initially came before the Court for hearing on December 9, 1999 at 2:00 PM upon the *Objection to Confirmation* (CP 13) filed by FirstPlus Financial, Inc. and upon the *Objection to Confirmation of Amended Chapter 13 Plan* (CP 17) filed by Household Finance Corporation III. At the hearing, the Court took the objections under advisement and requested the parties submit further memoranda of law and proposed orders as to their respective positions. Prior to the submissions by all parties and without due consideration, the Court inadvertently entered the proposed order submitted by FirstPlus Financial, Inc., *Order on Contested Confirmation* (CP 21). The Debtors thereafter sought reconsideration, filing *Debtors' Mo-*

*tion for Reconsideration of Order on Contested Confirmation and Memorandum of Law in Support Thereof* on January 18, 2000. Upon review of the Debtors' motion for reconsideration, the Court discovered it had inadvertently entered a dispositive order on the issues presented. Accordingly, in the interests of fairness and to provide the highest degree of due process, the Court will herein vacate the *Order on Contested Confirmation* (CP 21).

THE COURT having now reviewed the file and submissions of all interested parties, and having heard the proffers, representations and argument of counsel, finds as follows.

### BACKGROUND

1. This is a Chapter 13 case.

2. The Debtors own homestead real estate located at 9802 Hammocks Boulevard, Unit 104, Miami, Florida (the "Property").

3. The Debtors posit that the Property is worth $48,680.00.

4. The Property is encumbered by three mortgages. The first mortgage is to Fleet Mortgage Corporation and the Debtors have scheduled the balance of this mortgage at $60,300. The second mortgage is to FirstPlus Financial, Inc. ("FPF") and has a balance of approximately $20,733.80 and is completely unsecured. The third mortgage is to Household Finance Corporation III ("HFC"), has a balance of approximately $21,841.42 and is likewise completely unsecured according to the Debtors.

5. Since the value of the Property secures only the first mortgage, the Debtors seek to "strip off" the second mortgage to FPF and the third mortgage to HFC.

6. FPF filed bankruptcy in the Northern District of Texas, but the Debtors now have relief from the automatic stay in that case.

7. The Debtors argue that Chapter 13 debtors may value the collateral pursuant to 11 U.S.C. § 506 and "strip off" com-

pletely unsecured mortgages on homestead property even though 11 U.S.C. § 1322(b)(2) apparently prevents alteration of a secured creditor's rights where the only collateral is the debtor's principal residence.

8. FPF and HFC counter by citing to *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) for the proposition that such relief is not available to the Debtors based on the language of 11 U.S.C. § 1322(b)(2) and other reasons.

9. FPF and HFC have argued that the Debtors must file an adversary proceeding to avoid the junior mortgages and that the Debtors' motion was insufficient to bring the issues before the court. The court specifically overrules that argument by holding that the Debtors here seek to value the Property pursuant to Rule 3012 of the Federal Rules of Bankruptcy Procedure. *See, e.g., In re Plouffe,* 157 B.R. 198, 199 (Bankr.D.Conn.1993).

10. No valuation hearing has been conducted in this case, but the parties wish to have a ruling on the legal issues before incurring the cost of such a contested hearing.

11. The court assumes, for the purposes of this opinion, that the Property is worth less than the balance on the first mortgage and, therefore, that the junior mortgages to FPF and HFC are completely unsecured.

### MEMORANDUM OPINION

█ The issue in this case involves two sections of the Bankruptcy Code. As with any two statutes, there can be various interpretations when reading them together, but the court strives to read them harmoniously and to avoid dissonance.

The issue presented in this case is as follows:

**WHETHER THE CHAPTER 13 DEBTORS CAN AVOID A COMPLETELY UNSECURED JUNIOR MORTGAGE ON THEIR PRINCI-**

PAL RESIDENCE PURSUANT TO A VALUATION UNDER 11 U.S.C. § 506(a) GIVEN THE APPARENT "ANTIMODIFICATION" PROVISION CONTAINED IN 11 U.S.C. § 1322(b)(2) FOR LIENS SECURED SOLELY BY AN INTEREST IN THE DEBTORS' PRINCIPAL RESIDENCE?

The pertinent portions of Section 506 of the Bankruptcy Code provide as follows:

§ 506. Determination of secured status

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

. . .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

The pertinent portions of Section 1322 of the Bankruptcy Code provide as follows:

§ 1322. Contents of plan

. . .

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

### A. Nobelman v. American Savings Bank

The starting point for the resolution of the issues raised in this case is *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). This case discussed the interplay between § 506(a) and § 1322(b)(2) and found three reasons why the antimodification provision in § 1322(b)(2) prevented the debtors from avoiding a portion of the lien held by the bank against the debtors' principal residence. These reasons were:

1. That the plain language of § 1322(b)(2) does not allow a bifurcation (strip down) of a lien secured only by the debtor's principal residence (actual holding); and

2. That it was impossible to modify the "rights" of the mortgagee as to the unsecured portion of the lien only because the "rights" all arose out of the same loan documents (dicta); and

3. That the legislative history required protection of the home lending market (concurring opinion only).

The Court discusses each of these arguments below and finds that *Nobelman* does not preclude the "strip off" of the junior mortgages to FPF and HFC as they are completely unsecured.

### 1. *Nobelman's* Factual Background

In *Nobelman,* the Chapter 13 debtors, named Nobelman, had a mortgage of $71,-335 encumbering their principal residence in favor of American Savings Bank. The debtors placed an uncontroverted value of $23,500 on that property. *Id.* at 328, 113 S.Ct. at 2109. The debtors sought to value the property pursuant to § 506(a) and pay the secured portion of the bank's lien in full through their Chapter 13 Plan and consider the balance of the lien as an unsecured claim. In other words, the debtors sought to bifurcate the bank's lien into a secured claim of $23,500 and an unsecured claim of $47,835.

### 2. Bifurcation Prohibited by Plain Language of Statute

The Nobelman's argument was that § 1322(b)(2) protected only that part of the bank's lien that was actually secured. The debtors further argued that they could "strip down" the unsecured portion of the claim pursuant to § 506(a). The creditor responded by arguing that the debtors' interpretation eviscerated section 1322(b)(2)'s "antimodification" provision. The *Nobelman* court held, in an extremely succinct opinion, as follows:

> "[T]o give effect to § 506(a)'s valuation and *bifurcation* of secured claims through a Chapter 13 plan in the manner the [debtors] propose would require a modification of the rights of the holder of the security interest. Section 1322(b)(2) prohibits such a modification where, as here, the lender's claim is secured only by a lien on the debtor's principal residence."

*Id.* at 331, 113 S.Ct. at 2111 (emphasis added). This passage—the actual holding of the *Nobelman* decision—indicates that the Supreme Court ruled that the plain language of § 1322(b)(2) itself prevented the debtors from using a § 506(a) valuation to bifurcate a claim that is secured only by a lien on the debtor's principal residence.

*Nobelman* is wholly distinguishable from the instant case. The issue in that case was whether § 506 allowed the debtors to *bifurcate* the bank's mortgage into secured and unsecured components given § 1322(b)(2). Here, the Debtors seek to avoid wholly unsecured junior liens. They do not seek to *bifurcate* the claim of FPF or HFC. These liens, according to the Debtors, are completely unsecured and there is no need to bifurcate them. The Debtors seek to value the Property pursuant to § 506(a) and, if the value of the Property is less than the balance on the first mortgage, the Debtors will avoid in their entirety the liens held by FPF and HFC. That is, the Debtors do not seek to "strip down" the mortgages of FPF and HFC, they seek to "strip off" these mortgages. *In re Woodhouse,* 172 B.R. 1, fn. 1 (Bankr.D.R.I.1994) (distinguishing terms).

### 3. Prohibition against Modification of Mortgagee's Rights

The *Nobelman* court, in dicta, indicated various reasons for its decision that FPF and HFC have espoused in favor of their arguments against strip off in this case. The Supreme Court analyzed a mortgagee's "rights" under state law and used this analysis to determine that a bifurcation of the bank's claim would "modify" these rights in violation of § 1322(b)(2). The court's rationale for this holding was that the secured and unsecured components arose out of the same loan documents that gave the bank its rights and, therefore, the debtors could not "modify the payment and interest terms for the unsecured component . . . without also modifying the terms of the secured component." *Id.*

The mortgagee's "rights," discussed in *Nobelman's* dicta, included the right to receive monthly payments, to "proceed against the [debtor's] residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure." *Id.* at 329, 113 S.Ct. at 2110 (emphasis added). Another right, not mentioned by the Supreme Court, but very important, is a junior

mortgagee's right to advance funds to a senior mortgagee, insurer or tax collector to protect its collateral.

These "rights," however, have little legal or practical effect when a junior mortgagee's lien is completely unsecured. *In re Lam*, 211 B.R. 36, 40 (9th Cir. BAP 1997). For instance, in the context of a bankruptcy, a deficiency judgment is only an unsecured claim and dischargeable under any chapter of the Bankruptcy Code. The rights to foreclose and advance funds to protect the collateral are seldom used for a completely unsecured lien because a forced sale of the property would not net any return to the lender. *Lam* at 40. The *Lam* court expressly noted that where the junior lien is completely unsecured,

> Nothing secures the "right" of the lienholder to continue to receive monthly installments, to retain the lien until the debt is paid off, or the right to accelerate the loan upon default, if there is no security available to the lienholder to foreclose on in the event the debtor fails to fulfill the contract payment obligations.

*Id.* at 40. Another case similarly held that,

> [A]ny "rights" [a completely unsecured mortgagee] may assert under *Nobelman* by virtue of its security documents are illusory, hyper-technical, and possibly relevant only in law review articles.

*In re Woodhouse*, 172 B.R. 1, 2 (Bankr. D.R.I.1994). Thus, the mortgagee's "rights" discussed by the *Nobelman* court are inapplicable to the case at bar because the liens of FPF and HFC are completely unsecured.

#### 4. Protection of the Home Lending Market

Justice Stevens, in concurring with the majority in *Nobelman*, noted that the legislative history of § 1322(b)(2) indicated that the statute was "intended to encourage the flow of capital into the home lending market." *Nobelman*, 508 U.S. at 332, 113 S.Ct. at 2112. The concurring opinion

is not binding law on the parties in this case, but the court chooses to comment on it.

The court in *In re Plouffe*, 157 B.R. 198 (Bankr.D.Conn.1993) reasoned that the legislative history discussed by Justice Stevens referred only to the first mortgage market. "There are no such concerns when dealing with the second mortgage market." *Plouffe*, 157 B.R. at 200 (citing *The Bifurcation of Undersecured Residential Mortgages Under § 1322(b)(2) of the Bankruptcy Code: The Final Resolution*, 67 Am.Bankr.L.J. 207, 285 (1993)). The second mortgage market does not provide money for the purchase of homes and is thus not entitled to the protections of the first mortgage market. *Lam*, 211 B.R. at 41.

■ Neither FPF nor HFC assert that they hold a first mortgage on the Property; nor were their loans purchase money. FPF and HFC are therefore not within the protected class intended by the drafters of § 1322(b)(2).

#### B. Minority View Opposes Strip Off of Unsecured Junior Mortgages

The minority view on the issue of "strip off" is that a Chapter 13 debtor cannot avoid a completely unsecured junior mortgage from her principal residence. These cases swirl their analyses around the three rationales discussed in *Nobelman*. The only reported case to date in the state of Florida adopts the minority view. In *In re Tanner*, 223 B.R. 379 (Bankr.M.D.Fla. 1998), Judge Briskman based his decision to disallow strip off solely on the "rights" discussion in the dicta portion of *Nobelman*. The *Tanner* court, however, did not discuss or consider the debtor's absolute right to seek a § 506(a) valuation of her property.

The Chapter 13 debtor in *Tanner* sought to avoid a wholly unsecured mortgage in favor of FirstPlus Financial, Inc. The *Tanner* court began its reasoning with the proposition that property rights in bank-

ruptcy are controlled by state law. Then it noted that mortgagees in Florida have various state-law "rights" alluded to by the *Nobelman* court. The *Tanner* court ruled in favor of the unsecured junior lienholder based on this "rights" analysis without a discussion of why a § 506 valuation was impermissible. *Tanner*, 223 B.R. at 382–83.

## C. Majority View Supports Strip Off of Unsecured Junior Mortgages

It is undisputed that the majority of post-*Nobelman* cases confronted with the issue of completely unsecured junior mortgages have held that "strip off" is permitted by a logical reading of that case's interpretation of § 506 and § 1322. *See, e.g., In re Robinson*, 231 B.R. 30 (Bankr. D.N.J.1997) (not allowing strip off, but acknowledging it is the majority view); *Johnson v. Asset Management Group, LLC*, 226 B.R. 364, 366 (D.Md.1998) ("The courts have divided on the issue, with the majority deciding that such liens may be stripped off.").

### 1. § 506 Valuation Specifically Authorized by *Nobelman*

The reason for the majority view is simple. The *Nobelman* court itself found that the debtors "were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim." Thus, a § 506(a) valuation of a Chapter 13 debtor's homestead is legitimate and relevant when warranted. Such a valuation controls the determination of a mortgagee's security interest.

The § 506(a) analysis of the Debtors' Property in this case is critical. The Debtors assert that the liens of FPF and HFC are completely unsecured and they have sought a judicial valuation of the Property as explicitly instructed by *Nobelman*. The Debtors' well-supported point is that the court must first perform a § 506(a) valuation of the property before it reaches the § 1322(b)(2) antimodification issue. *In re Sette*, 164 B.R. 453, 455 (Bankr.E.D.N.Y.

1994). The cases in the minority hold that § 1322(b)(2) "trumps" § 506. *Flowers v. FirstPlus Financial, Inc.*, 1999 WL 118022, Page 3 (Bankr.E.D.Va.1999). But the more correct view—the one espoused by the majority—is that § 506 trumps § 1322.

The genesis for the view that § 506(a) takes precedence over § 1322(b)(2) comes straight from the *Nobelman* decision. The opinion explicitly states:

> It was permissible for petitioners to seek a valuation in proposing their Chapter 13 plan, since § 506(a) states that "[s]uch value shall be determined ... in conjunction with any hearing ... on a plan affecting such creditor's interest."

*Nobelman*, 508 U.S. at 329, 113 S.Ct. at 2110. The minority view—which discounts a § 506(a) valuation on a debtor's principal residence—relies only on the "rights" dicta in *Nobelman*, and fails to consider that the decision specifically authorized a judicial valuation of a Chapter 13 debtor's principal residence. *In re Scheuer*, 213 B.R. 415, 418 (Bankr.N.D.N.Y.1997). The more reasoned view, therefore, is that the court should use a § 506(a) valuation to determine whether a junior mortgagee holds an "allowed secured claim" in any amount. *In re Cerminaro*, 220 B.R. 518, 523 (Bankr.N.D.N.Y.1998); *In re Barnes*, 207 B.R. 588, 592 (Bankr.N.D.Ill.1997); *In re Williams*, 161 B.R. 27, 29–30 (Bankr. E.D.Ky.1993). If at least a portion of the junior mortgagee's lien is secured, the lender is entitled to the protections of § 1322(b)(2) because it holds a secured claim. *In re Phillips*, 224 B.R. 871, 872–73 (Bankr.W.D.Mich.1998); *In re Bivvins*, 216 B.R. 622, 625 (Bankr.E.D.Tenn.1997); *In re Lee*, 161 B.R. 271, 273 (Bankr. W.D.Okla.1993). Otherwise there is no "allowed secured claim" and there is no § 1322(b)(2) protection for the junior mortgagee. *In re Geyer*, 203 B.R. 726 (Bankr. S.D.Cal.1996); *In re Mitchell*, 177 B.R. 900, 902 (Bankr.E.D.Mo.1994).

The court in *Wright v. Commercial Credit Corp.,* 178 B.R. 703 (E.D.Va.1995), explained the concept of a preliminary § 506(a) valuation as follows:

[The junior mortgagee] argues that "secured claim" should be defined as a claim for which a lien exists to provide security. If that definition were used, any claim for which a lien exists, regardless of the value (or lack thereof) underlying that lien, would be considered secured. However, § 506(a) does not define the term "secured claim" in that manner. Instead, pursuant to § 506(a), a secured claim is secured only to the extent of the value of the creditor's interest in such property. Where there is no value underlying the claim, there is not a secured claim, despite the existence of a document to the contrary.

*Wright,* 178 B.R. at 707. This case stands for the proposition that allowing § 1322 to trump § 506—as the minority view does—leads to an outcome that renders § 506 useless. *In re Robinson,* 231 B.R. 30, 33 (Bankr.D.N.J.1997) (disallowing strip off and acknowledging that § 506 is rendered moot in such a case). Such an interpretation of *Nobelman* means the permission granted by that case for such a § 506(a) valuation is a nullity.

Eviscerating § 506 was not the intention of the Supreme Court and the minority's interpretation stretches common sense and logic. The clearer interpretation is that a junior mortgagee with a security interest in a Chapter 13 debtor's principal residence is entitled to the protections of § 1322(b)(2) only if the lien is at least partially secured. *In re Castellanos,* 178 B.R. 393, 394–5 (Bankr.M.D.Pa.1994); *In re Kidd,* 161 B.R. 769, 770–1 (Bankr. E.D.N.C.1993). That is, even in Chapter 13, "treatment under the [Bankruptcy] Code turns on whether a *claim* is secured or unsecured, not whether a *creditor* is secured or unsecured." *In re Bellamy,* 962 F.2d 176, 179 (2d Cir.1992) (emphasis in original). A secured claim of a junior mortgagee, however slight, will entitle the

creditor to the protection of § 1322(b)(2). *In re Cervelli,* 213 B.R. 900, 905 (Bankr. D.N.J.1997).

## 2. Allowing Strip Off does not Inconsistently Treat Claims

As discussed *supra,* the *Nobelman* court was concerned with the modification of the mortgagee's "rights" under relevant state law. The Supreme Court found that the Nobelmans could not possibly modify the unsecured portion of the loan without also modifying the secured portion. *Nobelman,* 508 U.S. at 331, 113 S.Ct. at 2111; *supra* at 483–84. The "inconsistent" treatment of different portions of the claim does not exist when the lien is stripped off. *In re Purdue,* 187 B.R. 188, 189–90 (S.D.Ohio 1995). The debtor is modifying only an unsecured claim, which is a result not prohibited by § 1322(b)(2) since the statute itself states that the Chapter 13 Plan may "modify . . . the rights of holders of unsecured claims." *In re Sanders,* 202 B.R. 986, 989 (Bankr.D.Neb.1996) (citing *In re Hornes,* 160 B.R. 709 (Bankr. D.Conn.1993)).

## CONCLUSION

For the reasons stated, the Court finds, as a matter of law, in a Chapter 13 case, the Debtors are permitted to "strip off" a completely unsecured mortgage encumbering their principal residence. Thus, it is

**ORDERED AND ADJUDGED** as follows:

1. The *Order on Contested Confirmation* (CP 21) is VACATED.

2. The *Objection to Confirmation* (CP 13) filed by FirstPlus Financial, Inc. and the *Objection to Confirmation of Amended Chapter 13 Plan* (CP 17) filed by Household Finance Corporation III are OVERRULED.

3. A valuation hearing will be held on February 7, 2000 at 9:30 AM in Courtroom 1409, 51 SW First Avenue, Miami, Florida, at which hearing the parties may present evidence

establishing the value of the subject real property pursuant to **11 U.S.C. § 506.**

4. A continued Confirmation Hearing will be held on February 24, 2000 at 9:30 AM in Courtroom 1410, 51 SW First Avenue, Miami, Florida.